**FIRST GOLDEN BANCORPORATION,**
Plaintiff,

v.

**Ronald F. WEISZMANN, Defendant, Third–Party Plaintiff and Appellant,**

v.

**MORGAN STANLEY & CO., INCORPORATED, A Delaware Corporation; Timothy Taebel and Lindner Management, Third–Party Defendants and Appellees.**

No. 89–1377.

United States Court of Appeals, Tenth Circuit.

Aug. 15, 1991.

Timothy J. Flanagan of Kelly, Stansfield & O'Donnell, Denver, Colo. (Robert J. Eber, with him on the brief), for defendant, third-party plaintiff and appellant.

Edward W. Stern of Parcel, Mauro, Hultin & Spaanstra, P.C., Denver, Colo. (Cheryl Burnside with him on the brief), for third-party defendants and appellees Morgan Stanley & Co. Inc. and Timothy Taebel.

Charles E. Merrill of Husch, Eppenberber, Donohue, Cornfeld & Jenkins, St. Louis, Mo., for third-party defendant and appellee Lindner Management Corp.

Before ANDERSON, BALDOCK and EBEL, Circuit Judges.

EBEL, Circuit Judge.

This is an appeal from the district court's order granting summary judgment to the appellees, third-party defendants in the action below. The third-party defendants were impleaded under Fed.R.Civ.P. 14(a) after the appellant, the third-party plaintiff, was made a defendant in a suit to recover short-swing profits under section 16(b) of the Securities Exchange Act of 1934 (codified at 15 U.S.C. § 78p(b)). The primary case settled. The district court than granted summary judgment in favor of the third-party defendants on all the third-party claims. This appeal followed. We affirm in part and vacate and remand in part.

### FACTS

Appellant in this case, Ronald Weiszmann, was the third party-plaintiff in the action below. He had acquired stock in First Golden Bancorporation, the original

plaintiff, as a result of a tender offer he had made for First Golden Stock. He ultimately sold his First Golden stock, and First Golden alleged that the sale was within six months of the time he acquired it, thus, making Weiszmann liable under section 16(b) of the Securities Exchange Act of 1934 for the profits from the sale. First Golden sued Weiszmann to recover the resultant short-swing profit. Weiszmann, in turn, brought counterclaims against First Golden and initiated a third-party complaint against the appellees: Morgan Stanley and its representative Timothy Taebel, who acted as Weiszmann's financial advisor during the course of the section 16(b) violation, and Lindner Management, the eventual purchaser of the stock. His third-party complaint was based on seven different claims: 1) indemnity; 2) outrageous conduct; 3) breach of contract; 4) fraud under section 10(b) of the Securities Exchange Act of 1934; 5) controlling person liability; 6) principal-agent liability; and 7) negligent misrepresentation. The relief he sought in the third-party complaint was, inter alia, indemnification for any liability he may have to First Golden, reimbursement of attorneys' fees and costs incurred to defend that lawsuit, and a recovery of commissions and profit realized by Morgan Stanley from the sale of the stock.

Claims two and three of the third-party complaint—claims for outrageous conduct and breach of contract—were eventually dismissed by the district court,[1] and the case was set for trial. Thereafter, First Golden and Weiszmann settled the primary lawsuit on terms that Weiszmann did not pay any money to First Golden but he was required to dismiss his counterclaims against First Golden. The third-party defendants then moved for summary judgment on all of Weiszmann's remaining third-party claims. The district court granted the summary judgment motion and dismissed all the third-party claims with prejudice. The court dismissed Weiszmann's first claim for indemnity because it held, as a matter of law, that there was no right to indemnity for liability under sec-

tion 16(b) of the Securities Exchange Act of 1934. The court dismissed the remaining third-party claims because it held that Weiszmann had settled First Golden's claims against him without incurring any liability or paying any damages to First Golden, and thus, there was no underlying liability upon which Weiszmann could predicate third-party claims under Fed.R.Civ.P. 14(a). The court indicated that a third-party action can be maintained under Rule 14(a) only for claims where the third-party defendant is asserted to be secondarily liable to the third-party plaintiff for the third-party plaintiff's liability to the plaintiff.

## ANALYSIS

### I. *No Indemnity For Section 16(b) Violations*

■ We agree with the district court that the third-party defendants were "entitled to judgment as a matter of law on Weiszmann's first claim for indemnity." Courts have rejected indemnity for a variety of securities violations because indemnity contravened "the public policy enunciated by the federal securities laws." A. Bromberg & L. Lowenfels, 2 *Securities Fraud & Commodities Fraud*, § 5.7 (277), at 5:82:78. *See also King v. Gibbs*, 876 F.2d 1275, 1281–82 (7th Cir.1989); *Stewart v. American Int'l. Oil & Gas Co.*, 845 F.2d 196, 200 (9th Cir.1988); *Stowell v. Ted S. Finkel Inv. Servs.*, 641 F.2d 323, 325 (5th Cir.1981); *Laventhol, Krekstein, Horwath & Horwath v. Horwitch*, 637 F.2d 672, 676 (9th Cir.1980), *cert. denied, sub nom., Frank v. U.S. Trust Co. of New York*, 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981); *Globus v. Law Research Serv.*, 418 F.2d 1276, 1288–89 (2d Cir.1969), *cert. denied*, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); *Alvarado Partners, L.P. v. Mehta*, 723 F.Supp. 540, 549 (D.Colo.1989), *dismissed without opinion*, 936 F.2d 582, (10th Cir.) (appeal dismissed as moot). Thus, one court has explained that

"Congress did not promulgate the 1933 and 1934 Acts to protect the parties who violate the Acts' provisions. In fact, the immediate concern of Congress was not

---

1. The dismissal of these two claims is not con-    tested on appeal.

to insure that parties injured by fraudulent activities were reimbursed but rather was to prevent future fraudulent activity. The United States in 1933 and 1934 was in the midst of a prolonged period of depression which Congress believed was caused in large part by excessive stock market speculation. Congress imposed civil liability on offenders of the Acts because experience had shown that criminal liability alone was insufficient to deter further wrongdoing. Some courts that have interpreted the 1933 and 1934 Acts have already concluded that providing a right to indemnity would undermine the deterrent purpose of the Acts."

*In re Olympia Brewing Co. Securities Litig.*, 674 F.Supp. 597, 612–13 (N.D.Ill. 1987) (citations omitted).

■ We find that these general concerns are also applicable to indemnification in section 16(b) cases, even though section 16(b) does not require proof of fraudulent intent. Section 16(b) is a prophylactic anti-fraud statute. The policy behind section 16(b) was to deter transactions which have a high potential for fraud. However, Congress determined that it was not practical to require proof of improper intent or scienter in cases of insider trading, and thus, section 16(b) was written to impose strict liability. That Congress felt the most effective way to deter fraud in this area was through use of strict liability does not, however, minimize the purpose behind the statute to prevent fraudulent trading based upon improper insider information or manipulation.

In relevant part, section 16(b) reads:

For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such securi-

ty was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months.

■ The statute does not require proof that the trading information was improperly obtained; it is enough to prove an insider relationship which gives rise to the potential that improper information "may have been obtained" and utilized in the trade. We find a "clear congressional intent to provide a catch-all, prophylactic remedy, not requiring proof of actual misconduct...." L. Hazen, *The Law of Securities Regulation*, § 12.3, at 417 (1985) (citing, Hearings on S.Res. 84 & S.Res. 97 Before The Senate Comm. on Banking and Currency, 73d Cong., 1st Sess., pt. 15, at 6557 (1934)). Thus, we hold that the public policy behind section 16(b) renders invalid any attempt by an insider to seek indemnification for his liability under section 16(b).[2]

There is support for our holding. In *Bunker Ramo–Eltra Corp. v. Fairchild Indus.*, 639 F.Supp. 409, 419 (D.Md.1986), *dismissed without opinion*, 801 F.2d 393 (4th Cir.1986) (dismissed for lack of a final appealable order), the court found that an indemnification agreement was void because if the "indemnification is found to be valid, then the defendants would have been able to waive, in effect, the requirement of section 16(b).... This result would frustrate the public policy behind the prohibition of insider trading within the six-month time period found in section 16(b)."

## II. *The Remaining Third–Party Claims*

Weiszmann also contests the granting of summary judgment on the rest of his third-party claims following the district court's dismissal of his first claim for indemnity.

---

**2.** We do not address in this opinion claims for indemnity that may arise under other provisions of the securities laws.

These claims, numbered four through seven, asserted section 10(b) liability, controlling person liability, principle-agent liability, and negligent misrepresentation. The relief requested included indemnification and recovery of Morgan Stanley's profits and commissions. These claims were dismissed with prejudice once summary judgment was granted on the first claim for indemnity.

The district court treated these claims as if they were all claims for reimbursement for damages stemming from liability that Weiszmann might have to First Golden. The court dismissed them because it concluded that Weiszmann had incurred no liability to First Golden, and thus, there was no underlying liability to be shifted to the third-party defendants under rule 14(a).[3] At the very least, the district court appears to have given inadequate consideration to the possibility that some or all of Weiszmann's remaining claims may have been ancillary claims under Fed.R.Civ.P. 18(a). The district court possessed the discretion to retain jurisdiction over ancillary claims even though the main third-party claim for indemnity had been dismissed.

We find our recent opinion in *King Fisher Marine Service, Inc. v. 21st Phoenix Corp.*, 893 F.2d 1155, 1166–72 (10th Cir. 1990), particularly helpful to this analysis. In *King Fisher* a contractor sued a development company in federal court on diversity grounds. That defendant impleaded under Rule 14(a) the contract supervisor, who was non-diverse from the defendant. The defendant also asserted against the third-party defendant various other damage claims in its third-party action. These claims, although related to the transaction involved in the 14(a) claim, were not claims for "liability over" but were, instead, separate claims for damages. We affirmed the jurisdiction of the district court under Fed.R.Civ.P. 18(a) to hear the additional third-party claims so long as the ancillary claims arose out of the same transaction or occurrence as the initial claim for liability. *King Fisher*, 893 F.2d at 1171. Many other courts have come to the same conclusion. *See United States v. City of Twin Falls*, 806 F.2d 862, 866–68 (9th Cir.1986), *cert. denied*, 482 U.S. 914, 107 S.Ct. 3185, 96 L.Ed.2d 674 (1987); *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l. Bank*, 515 F.2d 1200, 1204–1205 & n. 2 (5th Cir.1975); *In re Citisource, Inc. Securities Litig. v. City of New York*, 694 F.Supp. 1069, 1084 (S.D.N.Y.1988).

In the instant case, the district court had jurisdiction over Weiszmann's Rule 14(a) claim even though Weiszmann ultimately lost that claim on the merits. Rule 14(a) reads in relevant part:

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or *may* be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.

Fed.R.Civ.P. 14(a) (emphasis added). Thus, once Weiszmann was sued by First Golden, Rule 14(a) allowed him to bring an impleader action against the third-party defendants who might have been liable to him. So long as the Rule 14(a) claim is not a sham, the district court has jurisdiction over the claim even if the third-party claimant does not prevail on the claim.

Having brought a proper third-party claim, Rule 18(a) then allowed Weiszmann to join "either as independent or as alternative claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." Fed.R.Civ.P. 18(a). To the extent that Weiszmann has included non-indemnity claims against the third-party defendants, they are properly considered ancillary claims under Rule 18(a).

---

3. The district court stated, "Because ... Weiszmann settled [First Golden's] claim ... without Weiszmann incurring any liability or paying any damages to [First Golden], Weiszmann no longer possessed a viable third party claim against Morgan Stanley and Lindner for which it could collect damages under Fed.R.Civ.P. 14(a). Accordingly, I conclude as a matter of law that Morgan Stanley is entitled to summary judgment on Weiszmann's entire third party complaint." Dist.Ct.Order at 6.

▆ The fact that the main claim between First Golden and Weiszmann thereafter settled does not necessarily defeat jurisdiction of the district court over the third-party claims. When the main claim disappears, either through settlement or otherwise,

> [t]he vast majority of the cases conclude that the court retains jurisdiction over the impleader claim, and has discretion to proceed to litigate it. In determining how to proceed, the court may be influenced by timing. If the underlying suit is resolved quite early in the proceedings . . . the timing may augur toward dismissal of the impleader claim. If, on the other hand, the underlying claim is resolved after the case has been pending for some considerable time, or if the statute of limitations will have run . . . the court should retain jurisdiction. . . .

3 *Moore's Federal Practice* ¶ 14.26 at 14–126 (footnote omitted). This court has stated that " 'if jurisdictional prerequisites are satisfied when the suit is begun, subsequent events will not work an ouster of jurisdiction.' " *King Fisher*, 893 F.2d at 1172 (*citing Dery v. Wyer*, 265 F.2d 804, 808 (2d Cir.1959)).

Indeed, even if both the primary lawsuit and that portion of the third-party suit that seeks liability under Rule 14(a) are extinguished, any remaining third-party claims that were properly ancillary to the original Rule 14(a) claim may, at the discretion of the district court, be retained for disposition. *In re Citisource*, 694 F.Supp. at 1084. Although there may ordinarily be a reluctance to retain such ancillary claims once the primary indemnity claim is gone, there may be special circumstances that would persuade the district court to exercise its discretion to retain jurisdiction over the ancillary claims including, for example, if the district court has invested substantial time in preparing those claims for trial or if there would be statute of limitation problems if such claims are dismissed.

▆ Here, we find ambiguity in the district court's holding that because the third party's "motion for summary judgment is granted as to Weiszmann's first claim for indemnity, Weiszmann's remaining third party claims, based solely on Fed.R.Civ.P. 14(a), *fall as a matter of law."* Dist.Ct.Order at 5 (emphasis added). If by this statement the district court meant that, under the Federal Rules of Civil Procedure, a granting of summary judgment on the first claim for indemnity *required* dismissal of the other third-party claims, that would constitute error. However, to the extent that the remaining third-party claims were in reality just disguised indemnity claims for a section 16(b) violation, it would have been appropriate to dismiss them with prejudice. *See, e.g., Goldberg v. Touche Ross & Co.*, 531 F.Supp. 86, 87 (S.D.N.Y 1982); *Greene v. Emersons, Ltd.*, Fed.Sec.L.Rep. (CCH) ¶ 99,582 (1983–84 Transfer Binder) (S.D.N.Y.1983).

An examination of each of Weiszmann's remaining third-party claims is necessary to distinguish those claims that are simply "liability over" claims from those claims that ask for independent affirmative relief against the third-party defendants. Obviously, Weiszmann's first third-party claim—titled as "indemnity"—is simply a claim of "liability over," and thus the district court was correct in dismissing it with prejudice. That result is mandated by our holding that there is no right to indemnity under section 16(b).

However, in each of Weiszmann's remaining claims he contends that the third-party defendants made profits and commissions from the sale of the First Golden stock, and that *their* profits and commissions should be returned to him. We note that the $112,260 sum at issue in these remaining claims is not part of First Golden's claims against Weiszmann because the profit made by the third-party defendants is clearly not profit inuring to Weiszmann through his sale of First Golden stock. Therefore, because First Golden never had a right to this $112,260, Weiszmann may be able to characterize this portion of his third-party claims as non-indemnity claims.

More specifically, Weiszmann's fourth claim for relief is predicated on the section 10(b) liability because Morgan Stanley and Taebel allegedly failed to disclose material

facts relating to Weiszmann's sale of the First Golden stock. The claim specifically states that those third-party defendants "earned at least $112,260.00 in profits from the transaction through fraud and deceit and should be forced to disgorge those profits...." Appellant's Amended Third–Party Complaint ¶ 19, at 5. Without addressing whether this claim states a cause of action, it does appear susceptible of being construed as a non-indemnity claim.

Weiszmann asserts in his fifth claim for relief that Morgan Stanley had controlling person liability under section 20(a) of the Securities Exchange Act of 1934 (codified at 15 U.S.C. § 78t(a)). In this claim Weiszmann avers that "[d]ue to Morgan Stanley's position as a controlling person [with regard to Timothy Taebel] ... it should be held jointly and severely [sic] liable pursuant to Section 20(a)...." Appellant's Amended Third–Party Complaint ¶ 26 at 5. We note that in appropriate circumstances courts have upheld contribution liability in a securities context. *See, e.g., Smith v. Mulvaney,* 827 F.2d 558, 560 (9th Cir.1987). *Globus v. Law Research Service,* 318 F.Supp. 955, 957–58 (S.D.N.Y.1970), *aff'd,* 442 F.2d 1346 (2d Cir.), *cert. denied,* 404 U.S. 941, 92 S.Ct. 286, 30 L.Ed.2d 254 (1971); *deHaas v. Empire Petroleum Co.,* 286 F.Supp. 809, 815–16 (1968). Once again, it is far from clear that Weiszmann has stated a valid claim under section 20(a) premised on the underlying liability of Taebel. However, it does not appear to be an indemnity claim.

In Weiszmann's sixth claim for relief, labeled "Principal–Agent Liability," he again specifically requests a recapture of the $112,260 profit allegedly "earned through the breach of the duty of loyalty arising from the principal/agent relationship." Appellant's Amended Third–Party Complaint ¶ 30, at 6. Without addressing the merits of the claim, the profits and commissions that the third-parties allegedly earned off the sale of Weiszmann's stock was clearly not recoverable by First Golden in its original section 16(b) action, and so Weiszmann may be correct that his sixth claim for relief is a non-indemnity claim.

Finally, Weiszmann's seventh claim for relief is based on negligent misrepresentation. Weiszmann avers that Taebel affirmatively misled him and gave him false information concerning the transactions at issue. Specifically, Weiszmann claims that the third-party defendants promised that they would not solicit a certain individual's First Golden stock. Weiszmann states that he lost a valuable business opportunity by the alleged misrepresentation and breach of that promise by the third-party defendants. Although the relief sought pursuant to this claim is uncertain, and again we do not address the merits of this claim at this time, it does not appear to be a mere claim for indemnification. *See* Appellant's Amended Third–Party Complaint, ¶¶ 31–32, at 6.

■ We believe that the district court should, in the first instance, review these claims with such tools as are at its disposal to narrow and clarify them, and it should determine whether and to what extent they seek relief other than indemnification. To the extent that any of such claims are indemnification claims for liability that Weiszmann incurred under section 16(b), they should be dismissed with prejudice. With regard to any non-indemnification claims, the district court must exercise its discretion and decide whether to retain jurisdiction over such claims or to dismiss them *without prejudice.* To the extent that the district court decides to retain jurisdiction over any portions of counts four through seven, it should then proceed to address such claims on the merits. Therefore, we remand to the district court for further proceedings consistent with this opinion. *Alvarado,* 723 F.Supp. at 554.

## CONCLUSION

We AFFIRM the district court's dismissal of the first count in the third-party complaint because indemnity may not be had for a violation of section 16(b) of the Securities Exchange Act. We VACATE the order dismissing with prejudice counts four through seven of the third-party com-

plaint and we REMAND for further pro-
ceedings consistent with this opinion.