831 A.2d 1091

Thomas W. MORELAND, et ux.

v.

AETNA U.S. HEALTHCARE, INC.

Aetna U.S. Healthcare, Inc.

v.

Leonard L. Lucchi, Esq.

No. 2218, Sept. Term, 2001.

Court of Special Appeals of Maryland.

Sept. 8, 2003.

Maureen Quinn (Law Office of Maureen Quinn, on brief), Annapolis, Phillip R. Zuber (Sasscer, Clagett & Bucher, on brief), Upper Marlboro, for appellants.

Daly D. E. Temchine (Kathy Potter, Epstein, Becker & Green, P.C., on brief), Washington, DC, for appellee.

Argued before DAVIS, SALMON, DEBORAH S. EYLER, JJ.

DEBORAH S. EYLER, J.

The Circuit Court for Prince George's County dismissed the claims of Thomas W. Moreland and Julie Moreland, the appellants, against Aetna U.S. HealthCare, Inc. ("Aetna"), the appellee and cross-appellant, on the ground that they were time-barred. The court also dismissed Aetna's third-party claim against Leonard L. Lucchi, Esquire, the cross-appellee.

On appeal, the appellants pose four questions, which we have combined and reworded as follows:

I. Did the circuit court err in dismissing the appellants' claims on the ground of limitations because (a) the court incorrectly concluded that the appellants' causes of action accrued on October 3, 1991, as a matter of law; and (b) the court incorrectly concluded that the issues of inquiry notice and fraudulent concealment of causes of action were not for a trier-of-fact to resolve? [1]

On cross-appeal, Aetna poses one question, which we have rephrased:

II. Did the circuit court err in dismissing all of Aetna's third-party claims against Lucchi when it dismissed the appellants' claims against Aetna?

For the following reasons, we shall affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

On August 16, 1990, Thomas L. Moreland ("Moreland") suffered severe burns and other injuries in a well explosion

---

1. The appellants' questions presented, as stated in their brief, are:

I. The trial court legally erred in finding that the statute of limitations expired on October 3, 1994.

II. In the alternative, the question of when Moreland knew or should have undertaken an investigation of his cause of action is one for the factfinder.

III. The question whether Moreland's ignorance of his cause of action was induced by fraudulent concealment by Aetna was a question for the factfinder.

IV. A confidential relationship exists between Aetna and the Morelands as a matter of law.

accident. He was hospitalized and received extensive medical treatment for his injuries.

When the accident happened, Moreland was a member, through his employer, of the Healthplus health maintenance organization plan (the "HMO Plan"). The HMO Plan is subject to a Group Membership Service Agreement/Certificate of Coverage (the "Agreement"), which includes a subrogation clause. Aetna is the successor corporation to Healthplus.

Aetna paid the bills for Moreland's medical and hospital treatments for his injuries (except for co-payments he was required to pay). The sum paid by Aetna on Moreland's behalf totaled $254,859.70.

Moreland retained Lucchi to represent him in an action for damages against the tortfeasor responsible for the accident (the "tort action"). The subrogation clause of the Agreement purported to subrogate Aetna to Moreland's rights of recovery against the tortfeasor and entitle it to reimbursement from the tortfeasor of the medical and hospital expenses it had paid for Moreland, plus the cost of suit and attorneys' fees. For that reason, when settlement discussions ensued between Moreland (through Lucchi) and the tortfeasor's insurance carrier, Lucchi contacted Aetna.

In response to a request by Lucchi, Aetna agreed to reduce its subrogation lien to $203,887.76, to have Lucchi communicate the reduction to the tortfeasor's insurance carrier, and to pay Lucchi a fee equal to a pro rata share of the entire sum recovered in settlement.

Ultimately, negotiations resulted in a settlement of the tort action for $400,000. On October 3, 1991, pursuant to their agreement, Lucchi forwarded Aetna a check for $152,915.82, which represented Aetna's subrogation recovery of $203,887.76 minus Lucchi's $50,971.94 fee.

More than eight years later, on March 10, 2000, the Maryland Court of Appeals held in *Riemer v. Columbia Med. Plan*, 358 Md. 222, 233, 747 A.2d 677 (2000), that "pursuant to sections 190–701(f) and 19–710(b) and (*o*) of the Health Gener-

al Article, and the general statutory scheme of Maryland's Health Maintenance Organization Act, an HMO may not pursue its members for restitution, reimbursement, or subrogation after the members have received a financial settlement from a third-party tortfeasor, any contract to the contrary notwithstanding." Within days of the decision, the General Assembly enacted Senate Bill 903, Ch. 569, 2000 Md. Laws, effective June 1, 2000, authorizing contracts between HMOs and their subscribers to contain provisions "allowing the health maintenance organization to be subrogated to a cause of action that a subscriber has against another person." [2]

On May 7, 2001, in the Circuit Court for Prince George's County, the appellants sued Aetna, seeking to recover the $152,915.82 Aetna had received in the 1991 settlement of the tort action. Lucchi represented the appellants in their suit against Aetna.

Aetna filed a motion to dismiss and a third-party complaint against Lucchi for two counts of indemnification and one count each of legal malpractice, breach of fiduciary duty, breach of contract, constructive fraud, negligent misrepresentation, and intentional misrepresentation.

The appellants retained new counsel and filed an amended complaint. Their amended complaint stated claims for unjust enrichment; negligent misrepresentation; intentional misrepresentation; and violation of the Maryland Consumer Protection Act. They alleged that Aetna had improperly asserted a subrogation lien against their recovery in the tort action because, under *Riemer*, Aetna was without authority to include a subrogation clause in the Agreement and to exercise a right of subrogation.

---

**2.** The legislation stated it applied "to all subrogation recoveries by health maintenance organizations recovered on or after January 1, 1976." In *Dua v. Comcast Cable of Maryland, Inc.*, 370 Md. 604, 611, 805 A.2d 1061 (2002), the Court of Appeals held that the part of the enactment purporting to make it retroactive violated provisions of the Maryland constitution.

Aetna renewed its motion to dismiss, arguing, *inter alia,* that the appellants' claims were time-barred under Md.Code (1957, 1998 Repl.Vol.) section 5–101, of the Courts and Judicial Proceedings Article ("CJ"), because their causes of action accrued on October 3, 1991, but they did not file suit until more than three years later. In their opposition, the appellants argued that their causes of action did not accrue until March 10, 2000, when the Court of Appeals issued its decision in *Riemer;* in the alternative, Aetna fraudulently concealed the appellants' causes of action from them until March 10, 2000; there was a confidential relationship between Aetna and the appellants that meant the appellants were "under no duty to have discovered ... [their] cause of action prior to issuance of the *Riemer* decision"; and the issue of when the appellants were on inquiry notice of their causes of action was a factual question.

Lucchi moved to dismiss Aetna's third-party complaint on the grounds that Aetna had failed to allege any legal harm and did not allege facts to support its claim for punitive damages.

On November 9, 2001, the court held a hearing on the pending motions. It granted Aetna's motion to dismiss the appellants' claims on the ground of limitations. Lucchi argued that the court's dismissal of the appellants' claims meant it should dismiss Aetna's third-party claims. Aetna argued to the contrary, asserting that its third-party complaint included claims that were not for indemnification and therefore were independent of the appellants' claims. The court granted Lucchi's motion.

The appellants noted a timely appeal; Aetna noted a timely cross-appeal.

## DISCUSSION

### I

The appellants contend the circuit court erred in ruling that their claims against Aetna were time barred as a matter of law, and in dismissing the claims on that basis. They main-

tain that under the "discovery rule," as explained in *Poffenber-ger v. Risser*, 290 Md. 631, 634–35, 431 A.2d 677 (1981), they were not on inquiry notice of their causes of action until March 10, 2000, when the *Riemer* decision was handed down by the Court of Appeals; therefore, their suit, having been filed within three years of that date, was timely.

The appellants make two alternative arguments as to why the court erred in dismissing their claims. First, the question of when they were on inquiry notice of their claims was factual, and therefore was for the trier of fact to decide; and second, the question of whether Aetna fraudulently concealed their causes of action from them also was a factual issue that was for the trier of fact to decide. In connection with the latter argument, the appellants maintain that they were in a confidential relationship with Aetna.

The appellants' four claims against Aetna all were governed by the three-year general statute of limitations in CJ section 5–101. That statute provides, in pertinent part, that "[a] civil action at law shall be filed within three years from the date it accrues." Md.Code § 5–101 (1957, 1998 Repl.Vol.). Thus, the operative date for determining when limitations runs on a cause of action is the date of accrual.

In *Poffenberger v. Risser, supra,* the Court of Appeals applied the "discovery rule" to all tort claims, holding that a cause of action in tort accrues when the plaintiff has "express cognition" of his claim or has "awareness implied from 'knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus charging him] with notice of all facts which [a diligent] investigation would in all probability have disclosed if it had been properly pursued.'" 290 Md. at 637, 431 A.2d 677 (quoting *Baynard v. Norris*, 5 Gill. 468, 483 (1847)). More recently, in *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 445, 749 A.2d 796 (2000) (quoting *Poffenberger v. Risser, supra,* 290 Md. at 637, 431 A.2d 677), the Court of Appeals explained the "discovery rule" as follows:

A cause of action accrues only when the claimant knows or should know of the wrong.... A claimant reasonably should

know of a wrong if the claimant has "knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus, charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued."

\* \* \* \* \* \*

[T]he clock for a statute of limitations begins to run when a claimant gains knowledge sufficient to put him on inquiry notice. From that date forward, claimant will be charged with knowledge of facts that would have been disclosed by a reasonably diligent investigation. The commencement of the statute of limitations is not delayed until the conclusion of that diligent investigation.

*Id.* at 447–48, 749 A.2d 796 (quoting *Poffenberger v. Risser,* 290 Md. at 637, 431 A.2d 677) (citation omitted). *See also Hecht v. Resolution Trust,* 333 Md. 324, 334, 635 A.2d 394 (1994) (quoting *Poffenberger v. Risser, supra,* 290 Md. at 636, 431 A.2d 677) (observing that a "cause of action accrues when a plaintiff in fact knows or reasonably should know of the wrong").

When a cause of action accrues is usually a legal question for the court. *Poffenberger v. Risser,* 290 Md. at 633, 431 A.2d 677. When the question hinges on the resolution of disputed facts, however, it is for the fact-finder to decide. *O'Hara v. Kovens,* 305 Md. 280, 299, 503 A.2d 1313 (1986). "Depending on the nature of the assertions being made with respect to the limitations plea, th[e] determination [of whether the action is barred] may be solely one of law, solely one of fact, or one of law and fact." *Poffenberger,* 290 Md. at 634, 431 A.2d 677.

In the case at bar, the appellants concede that on October 3, 1991, the date of the settlement of the tort action, they had actual knowledge of all the facts on which their eventual claims against Aetna later were based: that the Agreement contained a subrogation clause stating that an HMO member who recovered from a third-party hospital and medical costs paid by Aetna was required to repay Aetna the

recovered sum; that Aetna had asserted its subrogation lien in the tort action; that a settlement was paid in the tort action; that part of the monies paid in the settlement had been paid over to Aetna; and that Aetna had discharged its subrogation lien as a result. They argue, however, that because they were not aware of their legal remedies against Aetna, even though they were aware of all the facts that would support the remedies, they were not on inquiry notice of their causes of action, and therefore their causes of action did not accrue on October 4, 1991.

Recently, the Maryland federal district court, relying on Maryland law, rejected a similar argument. In *Miller v. Pac. Shore Funding*, 224 F.Supp.2d 977 (D.Md.2002), a plaintiff purporting to represent a class sued a lender for various statutory violations, alleging the lender wrongfully had charged fees in conjunction with second mortgages. The lender moved to dismiss the action because it was not filed until more than three years after the plaintiff had knowledge of all the facts underlying his cause of action. The plaintiff opposed the motion on the ground that while he had notice of the facts underlying the claims he later asserted, he did not know of his legal rights to bring the claims; and until he gained knowledge of his legal rights, his cause of action did not accrue.

 The court rejected this argument, explaining:
Knowledge of *facts*, however, not actual knowledge of their legal significance, starts the statute of limitations running. *See Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 447[ ], 749 A.2d 796 ...; *Doe v. Archdiocese of Washington*, 114 Md.App. 169, 183–86, 689 A.2d 634 (1997) (explaining that a cause of action in tort generally accrues at the same time the act that constitutes the tort occurs—regardless whether the victim recognizes the act as legally wrong or comprehends the full extent of the harm). The discovery rule, in other words, applies to discovery of *facts*, not to discovery of *law*. Knowledge of the law is presumed. *See, e.g. Post v. Bregman*, 349 Md. 142, 156, 707 A.2d 806 (1998)

(noting that "parties to a contract are deemed to have contracted with knowledge of existing law"). Ignorance of the rights it grants and protects does not toll the statute of limitations. If plaintiffs remain unaware of their legal rights after notice of injury, the statute of limitations sets an absolute deadline for gaining awareness. A plaintiff must exercise reasonable diligence—defined by the limitations period—"in determining whether ... particular acts or omissions causing injury are actionable in court." *Capital Dist. Physician's Health Plan v. O'Higgins,* 939 F.Supp. 992, 1000 (N.D.N.Y.1996).

*Miller v. Pac. Shore Funding, supra,* at 986–87 (italics in the original) (footnote omitted).

We agree. In this case, by October 3, 1991, the appellants had actual knowledge of the facts necessary to assert a claim against Aetna for wrongfully exercising a subrogation lien. They are presumed to have had the knowledge of the law that would enable them to determine whether Aetna's assertion of the lien had been wrongful. Accordingly, they had three years from October 3, 1991, to file suit.

The appellants' accrual theory, in which their causes of action did not accrue until the Court of Appeals issued its decision in *Riemer,* is premised entirely on notice of the law, not notice of facts. The logical extension of their theory— that, had the *Riemer* case not been brought, their causes of action *still* would not have accrued—discloses its fallacy. The decision in the *Riemer* case had no bearing on the accrual date of the appellants' causes of action against Aetna.

With respect to the appellants' two alternative arguments, first, the facts material to when the appellants' causes of action against Aetna accrued were not in dispute. Accordingly, the accrual date of the causes of action was not a factual issue for resolution by a fact-finder; rather, it was a legal issue for the court to decide.

Second, CJ section 5–203, which governs tolling of limitations on the basis of fraudulent concealment, states: "If knowledge of a cause of action is kept from a party by the

fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered, the fraud." Knowledge of a cause of action in this context means knowledge of the *facts* on which a cause of action would rest, not knowledge of the *law,* which, as the court in *Miller* observed, is presumed. *See Waldman v. Rohrbaugh,* 241 Md. 137, 140, 215 A.2d 825 (1966) (noting that fraudulent concealment of facts constituting negligence tolls the running of the statute of limitations). In this case, there was no assertion by the appellants that Aetna had fraudulently concealed *facts* from them. Accordingly, the issue did not need to be submitted to a fact-finder for resolution; the circuit court properly ruled that the statute of limitations was not tolled by fraud, as a matter of law.

Finally, as noted above, in connection with their fraudulent concealment argument, the appellants assert that the circuit court should have addressed and decided their argument that they were in a confidential relationship with Aetna, and that the existence of that relationship operated to toll the statute of limitations. We see no merit in this argument. Even if the existence of a confidential relationship between parties is relevant to whether the fiduciary or trusted person had an obligation to disclose facts to the other so that the failure to disclose operated as a concealment, that is irrelevant to this case. Again, there was no assertion by the appellants that Aetna concealed or failed to disclose *facts.*

## II

In its cross-appeal, Aetna argues that the circuit court erred in dismissing six of its eight claims against Lucchi in the third-party complaint. It concedes that the court properly dismissed the two indemnification claims when it dismissed the appellants' claims. It maintains, however, that its other six claims against Lucchi were ancillary, that is, independent of the appellants' original claims, and therefore should not have been dismissed.

In Count I of the third-party complaint, Aetna alleged that Lucchi had acted as its attorney in the 1991 settlement and, contrary to the claims he now was asserting against Aetna on behalf of the appellants, Lucchi failed to inform Aetna that the health care costs it paid on Moreland's behalf were not included in the settlement, and in fact advised it to the contrary; failed to inform Moreland that he was not obligated to reimburse Aetna for the health care costs it had paid; and in fact disbursed to Aetna that portion of the settlement monies meant to reimburse it for its health care costs. Aetna alleged that it was its position that the health care costs were properly included in the settlement; however, if the Morelands should prevail in their claim that the health care costs were not properly included, Aetna would then be entitled to judgment against Lucchi for any sums Aetna might be adjudged liable to pay the appellants, plus costs, attorneys' fees, and interest.

In Count II, Aetna sought indemnification by Lucchi on a similar theory. It alleged that in 1991, when Lucchi was representing it in the settlement negotiations, Lucchi failed to inform Aetna that it might be acting improperly or illegally by exercising its subrogation lien. Aetna alleged that it was its position that its exercise of the subrogation lien was proper and legal; however, if the Morelands should prevail in their claim that Aetna acted illegally or improperly in asserting its subrogation lien, Aetna would be entitled to judgment against Lucchi for any sums Aetna might be adjudged liable to pay the appellants, plus costs, attorneys' fees, and interest.

In Count III, Aetna alleged that to procure a settlement, Lucchi represented to Aetna that the settlement he negotiated included payment of $203,887.76 of Aetna's hospital costs for Moreland, minus Lucchi's fee of $50,971.94; but:

> If Mr. Moreland's allegations, as vouched for by Mr. Lucchi when he filed the original complaint herein as Mr. Moreland's attorney are valid, then Mr. Lucchi committed malpractice when he erroneously and negligently misadvised ... Aetna in 1991 that the settlement fund from which he disbursed to it and to himself the combined sum of

$203,887.76 included that amount as reimbursement for Mr. Moreland's medical costs that were paid by Aetna.

Aetna went on to allege in Count III that "[i]f the allegations of Mr. Moreland's complaint are true," then Lucchi committed malpractice and negotiated a settlement that did not include compensation to Aetna for its health care costs. In addition, "if the factual allegations of the original and amended complaints in this case respecting the terms [of] Mr. Moreland's 1991 settlement are true," Lucchi placed his own interests above that of Aetna's, in violation of his fiduciary obligation. On those bases, Aetna prayed for damages in the amount of the fee paid to Lucchi, "for any amounts for which Aetna is adjudged liable to Mr. Moreland in this action," and for punitive damages, attorneys' fees in defending the Moreland litigation, plus costs and interest.

Counts IV through VIII were essentially the same as Count III except they alleged different theories of liability. In each count, Aetna alleged that during the 1991 settlement negotiations, Lucchi informed it that the settlement he was negotiating would include reimbursement for its health care costs; that the settlement was presented to Aetna and approved by it as doing so; that Aetna received the settlement monies with the understanding that they were in payment of its subrogation lien, which it then compromised; and that Aetna paid Lucchi's fee out of those monies on that basis, all of which was belied by the allegations Lucchi was making on behalf of the appellants, in the original and amended complaints. In each count, Aetna sought to recover precisely what it prayed for in Count III: Lucchi's fee; any amounts for which it might be adjudged liable to the appellants; punitive damages, attorneys' fees for defense of the Moreland litigation, and costs and interest.

■ Third-party claims are governed by Md. Rule 2–332, which provides at subsection (a):

**Defendant's claim against third party.**—A defendant, as a third-party plaintiff, may cause a summons and complaint, . . . to be served upon a person not previously a party to the

action *who is or may be liable to the defendant for all or part of a plaintiff's claim against the defendant.* A person so served becomes a third-party defendant.

(Emphasis added.) As the italicized language makes clear, under Md. Rule 2–332(a), a third-party claim is contingent upon and originates from the plaintiff's claim. *See Hartford v. Scarlett Harbor,* 109 Md.App. 217, 283, 674 A.2d 106 (1996), *aff'd,* 346 Md. 122, 695 A.2d 153 (1997); *see also Allen & Whalen, Inc. v. John C. Grimberg Co.,* 229 Md. 585, 586, 185 A.2d 337 (1962) (discussing predecessor Md. Rule 315(a)).

In *White v. Land Homes,* 251 Md. 603, 248 A.2d 159 (1968), the Court, discussing the predecessor rule and finding it *in pari materia* to Federal Rule of Civil Procedure 14, explained:

A third-party claim will lie in any case where it can be alleged that the third-party defendant is necessarily answerable to the original defendant should judgment be entered against him.

*Id.* at 609, 248 A.2d 159; *see also Bradyhouse v. Levinson,* 230 Md. 519, 522, 187 A.2d 838 (1963)(stating that a third-party claim must be for all or part of the plaintiff's claim against the original defendant).

In *Roebuck v. Steuart,* 76 Md.App. 298, 544 A.2d 808 (1988), this Court held that while no Maryland Rule expressly permits joinder of claims, once a third-party plaintiff properly asserts a third-party claim, he may join other independent but related claims (*i.e.,* ancillary claims) against the third-party defendant with that claim:

We are aware of no provisions in the Rules ... which prohibit the joinder of other claims in other counts. While Rule 2–303(c) and 2–503(a)(1) are not made *specifically* applicable to third party claims, we are aware of no reason or logic why related claims should not be joined with a third party claim.

*Id.* at 320, 544 A.2d 808 (emphasis in original). *Compare* Fed. R. Civ. Proc. 18 (expressly permitting joinder of claims).

In the *Roebuck* case, the plaintiffs sued the defendant as guarantors of certain debts. The defendant/third-party plain-

tiff sued her lawyer for indemnification, alleging that any liability on her part to the plaintiffs was due to his malpractice. She included in the third-party complaint two additional counts: one for legal malpractice, in which she sought recovery from the lawyer for a judgment entered against her in another case respecting another, related debt; and one for breach of fiduciary duty, in which she sought recovery of the proceeds of the sale of her home, which she had had to pay toward the debts she had guaranteed.

In holding that the two related, additional claims asserted by the third-party plaintiff against the third-party defendant lawyer were permissible, we explained that while those claims were not contingent upon the plaintiffs' claims, they arose out of the same related group of complex facts. We further explained that the purpose of the third-party practice rule, "to facilitate the attainment of a just, speedy and inexpensive determination of all disputes between the same parties," was advanced by our conclusion that related claims may be joined with a proper third-party claim. *Roebuck v. Steuart, supra,* 76 Md.App. at 321, 544 A.2d 808.

In the case at bar, Aetna relies on *Roebuck* to support its argument that the circuit court should not have dismissed what it contends were related, but not contingent, claims joined with its third-party indemnity claims. We disagree.

As Aetna acknowledges, a third-party claim for indemnity under Md. Rule 2–332(a) cannot stand when the plaintiff's original claim has been dismissed. The third-party claim necessarily depends upon the existence of the original claim because it is a claim for recovery of sums the defendant/third-party plaintiff may be adjudged liable to pay the plaintiff on the original claim. *Roebuck* does not stand for the proposition, however, that when the plaintiff's claim is dismissed and therefore a properly asserted third-party indemnity claim is dismissed, so a third-party claim meeting the definition of Md. Rule 2–332(a) no longer exists, related, ancillary claims of the third-party plaintiff that were joined with the third-party claim remain viable. Rather, *Roebuck*

merely stands for the proposition that it is proper to join related ancillary claims with a proper third-party claim.

In the federal courts, which, as we have noted, permit joinder of ancillary claims with third-party claims, under Fed. R. Civ. Proc. 18, when the plaintiff's claim is dismissed, the trial court has discretion to retain jurisdiction over ancillary claims joined with a third-party claim. In *First Golden Bancorporation v. Weiszmann*, 942 F.2d 726 (10th Cir.1991), the court addressed the interpretation of Fed. R. Civ. Proc. 18 by other federal courts, and explained:

> The vast majority of the cases conclude that the court retains jurisdiction over the impleader claim, and has discretion to proceed to litigate it. In determining how to proceed, the court may be influenced by timing. If the underlying suit is resolved quite early in the proceedings ... the timing may augur toward dismissal of the impleader claim. If, on the other hand, the underlying claim is resolved after the case has been pending for some considerable time, or if the statute of limitations will have run [on the ancillary claim] ... the court should retain jurisdiction. ...

*Id.* at 731 (quoting 3 *Moore's Federal Practice* ¶ 14.26, 12–28 (2d. ed.1996)) (footnote omitted).

If the six claims Aetna is concerned with in fact are ancillary claims, then under the federal practice, which we find persuasive given that Maryland's third-party practice rule is patterned after Fed. R. Civ. Proc. 14, the circuit court had discretion to retain jurisdiction over the claims. Aetna did not furnish the court any special circumstances to warrant its retaining jurisdiction over ancillary claims, however. Moreover, the proceedings were at an early stage and there otherwise did not appear to be any special circumstances to warrant retention of jurisdiction over ancillary claims. Accordingly, we cannot say the circuit court abused its discretion in dismissing all of Aetna's third-party claims.

In addition, it is quite clear that the six claims in question are not ancillary claims at all. Rather, like the two indemnification claims Aetna acknowledges properly were dismissed,

these claims originated from and were entirely contingent upon the appellants' claims against Aetna. Given that the claims depended upon the continued existence of the appellants' original claims, the circuit court properly dismissed them.

**JUDGMENT AFFIRMED. COSTS OF THE APPEAL TO BE PAID ONE HALF BY THE APPELLANTS AND ONE HALF BY THE CROSS–APPELLANT.**