UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DAVID MILLER; ROSALIE MILLER;
CHIMA GILBERT-IHEME,

*Plaintiffs-Appellants,*

v.

PACIFIC SHORE FUNDING; AMAXIMIS
LENDING, L.P.; GMAC, Residential
Funding Corporation; HOMEQ
SERVICING CORPORATION, formerly
known as TMS Mortgage; BANC
ONE FINANCIAL SERVICES,
INCORPORATED; MBNA AMERICA
(Delaware), N.A.; HOUSEHOLD
FINANCE CORPORATION; BANKERS
TRUST COMPANY OF CALIFORNIA,
N.A.,

*Defendants-Appellees.*

No. 03-1029

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, Senior District Judge.
(CA-02-569-S)

Argued: October 30, 2003

Decided: January 28, 2004

Before WIDENER, MOTZ, and DUNCAN, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Edwin David Hoskins, E. DAVID HOSKINS, L.L.C., Baltimore, Maryland, for Appellants. Gerard Joseph Gaeng, ROSENBERG, PROUTT, FUNK & GREENBERG, L.L.P., Baltimore, Maryland, for Appellees. **ON BRIEF:** Craig L. McCullough, ROSENBERG, PROUTT, FUNK & GREENBERG, L.L.P., Baltimore, Maryland; James W. Bentz, Roy W. Arnold, John M. McIntyre, REED SMITH, L.L.P., Pittsburgh, Pennsylvania; John T. Prisbe, VENABLE, BAETJER & HOWARD, Baltimore, Maryland; Mitchel H. Kider, WEINER, BRODSKY, SIDMAN & KIDER, P.C., Washington, D.C.; Daniel J. Tobin, KIRPATRICK & LOCKHART, L.L.P., Washington, D.C.; Gregory L. Lockwood, POPE & HUGHES, P.A., Towson, Maryland; Daniel H. Squire, WILMER, CUTLER & PICKERING, Washington, D.C., for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

David and Rosalie Miller and Chima Gilbert-Iheme filed a putative class action against Pacific Shore Funding, a secondary mortgage lender, and seven assignees in Maryland state court, which the defendants subsequently removed to federal court based on diversity of citizenship and the requisite jurisdictional amount. The complaint alleges that the defendants issued secondary mortgage loans with improper and excessive closings costs in violation of Maryland law. We affirm the district court's dismissal of the complaint.

I.

David and Rosalie Miller allege that on February 22, 2000, they obtained a secondary mortgage loan from Pacific Shore Funding

("Pacific"). They contend that at closing they were charged a number of fees including: a funding fee ($195), a processing fee ($295), an express mail fee ($15), a signing fee ($150), a sub escrow fee ($350), an abstract or title search fee ($150), and a flood certification fee ($18). Sometime thereafter, their loan was allegedly assigned to GMAC-Residential Funding Corporation ("GMAC").

Chima Gilbert-Iheme alleges that on October 13, 1998, he also obtained a secondary mortgage loan from Pacific. He asserts that Pacific charged him additional fees at closing including: an appraisal fee ($75), a credit report fee ($6), a funding fee ($175), a processing fee ($275), a messenger/state tax fee ($415), a document signing fee ($125), a sub escrow fee ($200), a title exam fee ($150), a document prep fee ($25), and a flood certification fee ($17). Although these fees were charged at closing, Gilbert-Iheme maintains they were not paid at that time, but instead were included in the total indebtedness on the loan and paid in monthly installments as a portion of the loan principal. Sometime thereafter, his loan was allegedly assigned to MBNA America (Delaware), N.A. ("MBNA") and Household Finance Corporation ("Household").

The Millers and Gilbert-Iheme (collectively "Plaintiffs") contend that their respective closing costs exceed those permitted under the Maryland Secondary Mortgage Loan Law ("SMLL"). They maintain that other Maryland consumers similarly obtained secondary mortgage loans from Pacific and similarly suffered damage from the company's assertedly "predatory lending practices." Plaintiffs seek to represent these consumers in a certified class action. Plaintiffs' three-count complaint alleges violations of the SMLL and the Maryland Consumer Protection Act ("CPA"), and seeks a declaration that the loan contracts are void or voidable as illegal contracts against public policy. Named as defendants in the complaint are the loan originator (Pacific) and seven entities alleged to be subsequent purchasers, assignees, or holders of the Maryland secondary mortgage loans initiated by Pacific (collectively the "Lenders").[1]

---

[1]These entities include Amaximis Lending, L.P., GMAC-Residential Funding Corporation, Homeq Servicing Corporation, f/k/a TMS Mortgage, Banc One Financial Services, Inc., MBNA America (Delaware), N.A., Household Financing Corporation, N.A., and Bankers Trust Company of California, N.A.

II.

The Lenders moved to dismiss Plaintiffs' complaint. Collectively, they articulated three main arguments supporting dismissal. First, they contended that Gilbert-Iheme's claims were filed outside the applicable statute of limitations, and thus were time-barred. Second, they maintained that Plaintiffs lacked standing to pursue claims against those Lenders who did not take assignment of their loans. Finally, the Lenders asserted that Plaintiffs failed to state a claim on which relief could be granted.

With respect to Gilbert-Iheme, the court dismissed all of his claims either by concluding they were time-barred, or that he was without standing to pursue them. *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 997 (D. Md. 2002). In particular, the court dismissed Gilbert-Iheme's claims against the loan originator (Pacific) and the two subsequent holders of his loan (MBNA and Household) on statute of limitations grounds, and dismissed his claims against the other five Lenders for lack of standing. *Id.* at 990, 996-97.

The court then dismissed all but one of the Millers' claims, concluding that they had either failed to state a claim upon which relief could be granted, or that the Millers lacked standing. *Id.* at 997. Specifically, the court held that the Millers had no claim against the loan originator (Pacific) or the subsequent holder of their loan (GMAC) under the CPA, nor were they entitled to declaratory relief. *Id.* at 993-994, 997.[2] The court further held that the Millers lacked standing to pursue any claims against the remaining six Lenders. *Id.* at 996-97. The court engaged in an extensive analysis prior to dismissing each of these claims.

In addressing the statute of limitations defense with respect to Gilbert-Iheme, the court applied Maryland's "discovery rule" to determine the governing accrual date. *Id.* at 986. Because the disputed "charges were all expressly identified in the closing documents," the court concluded that Gilbert-Iheme had sufficient knowledge of the circumstances giving rise to his injury on October 13, 1998, and

---

[2]Plaintiffs do not appeal the court's denial of their claim for declaratory relief.

therefore the limitations period accrued at that time. *Id.* at 986. Since Gilbert-Iheme did not file this action until January 16, 2002, three months after the controlling three-year statute of limitations had expired, the court deemed his claims time-barred. *Id.* at 986, 990.

The district court rejected Gilbert-Iheme's contention that his action did not accrue until he became aware that his loans might not comply with the SMLL because "[k]nowledge of *facts* . . . not actual knowledge of their legal significance, starts the statute of limitations running." *Id.* (emphasis in original); *see also Moreland v. Aetna U.S. Healthcare, Inc.*, 831 A.2d 1091, 1096 (Md. App. 2003)(adopting the reasoning of the district court in this case). The court further held that Gilbert-Iheme failed to allege any deceptive acts "that would retard his discovery of the facts and circumstances enabling him to file suit," and thus the limitations period could not be tolled on account of fraud. *Id.* at 987-89. Finally, the court was not convinced that a new actionable SMLL violation occurred each month when Gilbert-Iheme paid his mortgage bill, beginning the running of the limitations period anew. *Id.* at 989. Although the court acknowledged the ingenuity of this argument, it concluded that the "punctuated charging, receipt, and collection are no more than the lingering, ongoing, continuing aspects of a unitary action initiated more than three years ago." *Id.* at 990.

After disposing of Gilbert-Iheme's claim on limitations grounds, the district court determined that none of the Plaintiffs had standing to sue the Lenders who did not hold, and had never held, the named Plaintiffs' loans. *Id.* at 995-96. The court concluded that Plaintiffs could not demonstrate two of the three elements necessary to establish standing — traceability and redressability — with respect to the non-holder Lenders, and that characterizing the suit as a putative class action did not cure this fatal defect. *Id.* Finding that Plaintiffs failed to "establish that they have been harmed by each of the defendants," the district court dismissed the claims raised against the Lenders that did not take assignment of Plaintiffs' respective loans. *Id.* at 996-97.

Finally, the court concluded that although the Millers set forth a viable claim under the SMLL, they stated no cause of action under the CPA, and were not entitled to declaratory relief. *Id.* at 990-94. Accordingly, the only portion of the complaint to survive these initial

proceedings was the Millers' claim against Pacific and GMAC alleging violations of the SMLL. *Id.* at 997.

Several months later, with only the Millers' SMLL claim remaining, Pacific and GMAC brought to the court's attention the fact that the Millers had filed for Chapter 7 bankruptcy eleven months after closing on the disputed loan. The court ordered the Millers to show cause "why [it] should not dismiss their action *in toto*." After considering the Millers' response, the court concluded that, like Gilbert-Iheme, their cause of action accrued no later than the date of the loan closing. *Miller v. Pac. Shore Funding*, 287 B.R. 47, 50 (D. Md. 2002). Pursuant to the Bankruptcy Code provision establishing that "all legal or equitable interests of the debtor in property as of the commencement of the case" becomes the property of the estate, 11 U.S.C. § 541(a)(1) (2003), the court held that the Millers' SMLL cause of action belonged to the bankruptcy estate, rendering the bankruptcy trustee the only person with standing to pursue it. *Miller*, 287 B.R. at 49-50. Because the Millers, the only remaining named Plaintiffs, could therefore assert no viable cause of action, the court then dismissed the complaint in its entirety for lack of subject matter jurisdiction. *Id.* at 52.

The Millers and Gilbert-Iheme appeal.

### III.

After carefully considering the record, the briefs, and the applicable law, and having the benefit of oral argument, we conclude that the district court properly dismissed Plaintiffs' complaint. We agree that Gilbert-Iheme's claims are time-barred, and that, as a result of the Millers' subsequent bankruptcy filing, their SMLL claim can only be pursued by the bankruptcy trustee. Because this disposes of the entirety of Plaintiffs' complaint, we need not address whether Plaintiffs lacked standing against the non-holder Lenders, or whether Plaintiffs stated a cause of action under the CPA.

### A.

We affirm the district court's holding that Gilbert-Iheme's claims against Pacific, MBNA, and Household are time-barred for the rea-

sons stated by the district court, and find the court's reasoning equally applicable to the other five Lenders. We engage in further discussion only to clarify one issue.

Before the district court and again at oral argument, Gilbert-Iheme argued that his claims did not accrue at closing, but instead accrued anew upon each mortgage payment. This argument, premised solely on the fact that he financed the disputed closing costs rather than paying them in full at closing, misconstrues the character of the closing fees at issue, and fails to recognize the material distinction between interest payments and fees.

Interest payments are charged on an ongoing basis and do not become a legally enforceable debt until they accrue. For example, as Plaintiffs' counsel recognized at oral argument, if a consumer chooses to pay off the principal of his mortgage at an earlier date than specified in the loan agreement, a lender would not be entitled to collect the unaccrued future interest. The closing costs charged here, on the other hand, even if rolled into the loan principal, become a legally enforceable obligation as soon as the loan is issued. The mere fact that a consumer decides to finance this obligation is of no consequence. If a consumer chooses to pay off his loan principal at an earlier date, the lender would still be entitled to collect the unpaid portion of the fees. Thus, regardless of how the fees are paid — through financing or at closing — they become a legally enforceable debt as of the closing date. Accordingly, Gilbert-Iheme's claims accrued when he signed the closing documents and *paid* the disputed fees, even though that payment was through the expedient of a promissory note. *Cf. American Inn v. Sun Trust Banks, Incorporated*, No. 01-1888, 2002 WL 220018 (4th Cir. 2002) (holding under *Virginia* law debtor's claim that bank incorrectly calculated *interest* accrued at time each individual *interest* payment was made). The three-year statute of limitations having run, his claims are now time-barred.

## B.

We also affirm the dismissal of the Millers' claims for lack of subject matter jurisdiction as a result of their subsequent bankruptcy filing. The district court properly concluded that only the bankruptcy trustee can pursue the Millers' SMLL claim against Pacific and

GMAC; moreover, this rationale applies equally to the Millers' CPA claim, as well as to their claims against the remaining Lenders.

IV.

Accordingly, the judgment of the district court is

*AFFIRMED.*