933 A.2d 905

Ralph S. CROWDER et al.

v.

MASTER FINANCIAL, INC. et al.

No. 01784, Sept. Term, 2006.

Court of Special Appeals of Maryland.

Sept. 12, 2007.

Reconsideration Denied Nov. 6, 2007.

632

634

636

E. David Hoskins(on the brief), of Baltimore, for appellant.

Ward B. Coe, III (Christopher B. Lord, Gerard J. Gaeng, James E. Cosan, Sedica Sawez on the brief), Baltimore, for appellee.

Argued before SHARER, MEREDITH, and LAWRENCE F. RODOWSKY, (Retired, specially assigned) JJ.

MEREDITH, J.

This case arises from the dismissal of nineteen consolidated cases brought by twenty-one plaintiffs against various finance entities ("the lenders") alleged to have violated Maryland's

Secondary Mortgage Loan Law ("SMLL"), Maryland Code, Commercial Law Article ("CL"), §§ 12–401 *et seq.* Nine of the cases were filed as putative class actions, and the remaining ten were filed as individual lawsuits. After some defendants entered into class action settlements and others were voluntarily dismissed by the plaintiffs, the Circuit Court for Baltimore City granted several of the defendants' motions to dismiss on the ground that the plaintiffs' claims were barred by the three-year statute of limitations for civil claims. In addition, the circuit court ruled that the named plaintiffs in the putative class action suits lacked standing to assert, on behalf of unknown potential class members, claims against those defendants (the "non-holder" defendants) which had never held the loans of the named plaintiffs. Appellants, in their brief, identify the following three issues for our review:

1. Whether a named Plaintiff in a class action has standing to assert a claim on behalf of absent class members against assignee defendants who are juridically linked to the class action because they all purchased second mortgage loans that included excessive closing costs from a common originator.

2. Whether the twelve-year statute of limitations established by Maryland Code (1974, 2006 Supp.), Courts & Judicial Proceedings Article ("CJP"), § 5–102, applies to the claims asserted in the various lawsuits in circumstances where either the promissory note or the deed of trust was signed "under seal."

3. Whether the discovery rule requires that all causes of action challenging the legality of loan closing costs accrue three years after the date of the loan closing, irrespective of the date when the borrower discovered his or her injury.

We conclude that appellants lack standing to sue, on behalf of potential unnamed class members, those non-holder defendants which have never held the loans of the named plaintiffs. We further conclude that the three-year statute of limitations applies to all claims. We conclude that the circuit court properly dismissed appellants' claims under the Consumer Protection Act ("CPA"), but that the circuit court erred in

dismissing in their entirety appellants' claims under the SMLL and appellants' claims for declaratory judgment. The statutory remedy that is provided in CL § 12–413 for a violation of the SMLL eliminates the lenders' right to collect any interest, costs or other charges beyond the principal amount of the loan, and such statutory remedy does not become unavailable three years from the date of closing on the loan. Consequently, although the statute of limitations will preclude the plaintiffs from seeking to recover monies they paid more than three years prior to the date on which they filed suit, the plaintiffs are not barred from seeking to recover any sums defendants collected in excess of the principal amount of the loan within three years prior to the date suit was filed and thereafter. Accordingly, we shall affirm the decision of the circuit court in part and reverse in part. We shall remand for further proceedings with respect to appellants' claims under the Secondary Mortgage Loan Laws and appellants' claims for declaratory judgment.

## I. Facts and Procedural History

At various times in 2001, 2002, and 2003, the twenty-one appellants in this consolidated appeal filed a total of nineteen lawsuits against more than fifty defendant finance entities. Appellants' complaints alleged that the original lenders violated the SMLL generally in three respects: (1) by failing to obtain the state licenses for making secondary mortgage loans; (2) by charging the borrowers impermissible fees in excess of those permitted by the statute; and (3) by failing to provide loan applicants a required disclosure form. The plaintiffs sued, in addition to the originating lenders who committed the alleged violations of the SMLL, the entities that purchased the promissory notes and deeds of trust and became subsequent assignees of the loans. Plaintiffs contend that, under the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. § 1641(d)(1), all such successive holders of the plaintiffs' loan obligations are subject to all claims and defenses that can be asserted against the originating lender. And in the putative class action complaints, appellants also sued

various non-holder defendants, alleging that such non-holder defendants had purchased similar loans from the originating lenders notwithstanding the fact that the non-holder defendants never had any direct relationship with the named plaintiffs.

Six of the nineteen lawsuits were filed as putative class actions seeking damages, as well as declaratory and injunctive relief, upon three theories: (1) the defendants' violation of the SMLL entitled the plaintiffs to damages; (2) the defendants' conduct also constituted a violation of the Maryland CPA, such that plaintiffs were entitled to relief under that statute; and (3) because the loan agreements violated the SMLL, they were void or voidable. In three putative class action suits, the complaints alleged only violation of the SMLL and the Consumer Protection Act. In the remaining ten lawsuits filed without asserting class action claims, the complaints sought relief only on the ground that the defendants had violated the SMLL.

On July 31, 2002, the circuit court ordered the cases consolidated. Throughout the remainder of 2002, various defendants filed motions to dismiss or motions for summary judgment on the ground that appellants' claims were barred by the statute of limitations. On January 23, 2003, and January 30, 2003, the circuit court held hearings on the motions to dismiss. For reasons unclear from the record, there was no disposition of the motions for more than three years. In the meantime, various plaintiffs dismissed their claims against various defendants, either unilaterally or pursuant to settlements. On July 26, 2006, the circuit court held another hearing on the outstanding motions to dismiss.

On August 25, 2006, the circuit court issued a memorandum opinion and order granting one of the motions to dismiss. The circuit court concluded that the plaintiffs' claims were all barred by the three-year statute of limitations applicable to most civil cases in Maryland. The court ruled that the statute began to run on the date of the loan closing, and that the statute of limitations had not been tolled by the discovery rule.

The circuit court further concluded that the named plaintiffs in the putative class action lacked standing to assert, on behalf of unnamed potential class members, claims against the non-holder entities that had never held loans of the named plaintiffs. In addition to granting the motion to dismiss filed jointly by PB Investment Corp. and PB REIT, Inc., the order said:

> [I]t is further ordered that all defendants, in this case and other related second mortgage actions pending before this Court, who have filed Motions to Dismiss premised on the assertions that the plaintiff(s)'s [sic] claims are time-barred by the statute of limitations and/or that the plaintiff(s)'s [sic] lack standing, and whose facts are consistent with the Memorandum of Decision accompanying this order are hereby directed to submit proposed orders to which the plaintiff(s) will have twenty (20) days to file an opposition setting forth the reasons why those proposed orders are not consistent with the accompanying Memorandum of Opinion.

The remaining defendants submitted final judgment orders which were subsequently signed by the circuit court and entered on the docket on September 26, 2006. Appellants filed separate notices of appeal from each judgment.

## II. Final Judgment

On May 9, 2007, this Court issued a show cause order directing appellants to file responses showing why the appeal should not be dismissed as premature. Although some of the orders purporting to be final judgment orders invoked Maryland Rule 2–602(b), certifying those judgments as final despite the fact that the orders did not apply to all defendants, others of the orders did not mention Rule 2–602(b).[1]

---

1. Rule 2–602 provides:

 **(a) Generally.** Except as provided in section (b) of this rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:

Appellants responded to this Court's show cause order with the requested documents, detailing the result as to each defendant in each of the nineteen cases. Included in the documents provided were complete docket entries, as well as copies of stipulations of dismissal and voluntary dismissals that were not previously provided to this Court in the record extract. In anticipation of the circuit court's grant of the motions to dismiss, the plaintiffs had, on September 14, 2006, filed in seven of the cases dismissals as to those defendants which had not previously filed motions to dismiss. The voluntary dismissals, although filed separately, contained identical language stating:

> Plaintiffs, by their undersigned counsel, pursuant to Maryland Rule 2–506(a) voluntarily dismiss, without prejudice, all claims pending against _____ *only,* in order to facilitate appeal, with each party to bear its own costs and expenses.

(Emphasis in original.).

■ Generally, this Court reviews only final judgments of the circuit court. CJP § 12–301; Md. Rule 2–602. Neither party in this case has raised the issue of finality of judgment in their briefs to this Court, but because the issue of finality of judgment is jurisdictional, we raise it *nostra sponte. Milburn v. Milburn,* 142 Md.App. 518, 523, 790 A.2d 744 (2002).

■ To qualify as a final judgment, an order "must either decide and conclude the rights of the parties involved or deny a party the means to prosecute or defend rights and interests in the subject matter of the proceeding." *Nnoli v. Nnoli,* 389

---

(1) is not a final judgment;
(2) does not terminate the action as to any of the claims or any of the parties; and
(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.
**(b) When Allowed.** If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:
(1) as to one or more but fewer than all of the claims or parties; or
(2) pursuant to Rule 2–501(f)(3), for some but less than all of the amount requested in a claim seeking money relief only.

Md. 315, 324, 884 A.2d 1215 (2005). A final judgment must satisfy the following three criteria:

(1) [I]t must be intended by the court as an unqualified, final disposition of the matter in controversy, (2) unless the court properly acts pursuant to Md. Rule 2–602(b), *it must adjudicate or complete the adjudication of all claims against all parties,* and (3) the clerk must make a proper record of it in accordance with Md. Rule 2–601.

*Rohrbeck v. Rohrbeck,* 318 Md. 28, 40, 566 A.2d 767 (1989) (emphasis added).

In this case, our reason for issuing the show cause order was that the September 26, 2006, orders appeared not to satisfy the second requirement. The orders did not dismiss the claims against all defendants in all nineteen cases. Recognizing this fact, appellants filed voluntary dismissals to dispense with claims against those remaining defendants that had not settled, stipulated to dismissal, or filed motions to dismiss. In responding to this Court's show cause order, appellants included as exhibits the voluntary dismissals in seven of the nineteen cases. The voluntary dismissals explicitly said that certain defendants were being voluntarily dismissed, without prejudice, "in order to facilitate appeal."

We questioned whether, under our holding in *Collins v. Li,* 158 Md.App. 252, 255–56, 857 A.2d 135 (2004), appellants' voluntary dismissal without prejudice of the remaining defendants impermissibly circumvented the final judgment rule. In *Collins,* we held that voluntary dismissals without prejudice as to remaining defendants could not be used by the plaintiffs to facilitate what was essentially an interlocutory appeal of the summary judgment granted to a deep-pocket defendant. We noted that, in the dismissals, the plaintiffs clearly expressed their intent to refile their claims against the voluntarily dismissed defendants after our ruling on appeal, and we therefore concluded that the plaintiffs in *Collins* had dismissed the remaining defendants without prejudice in order to obtain what amounted to an advisory opinion from this Court. We

held that such action to circumvent the final judgment rule was impermissible, and we dismissed the appeal.

*Collins* was a case of first impression in Maryland, presenting the issue of whether, in the absence of a Rule 2–602(b) certification, plaintiffs could obtain a final judgment by voluntarily dismissing remaining defendants without prejudice. After reviewing decisions from other jurisdictions, we noted:

> [T]he general rule is that a plaintiff cannot appeal from the dismissal of some claims when the balance of his or her claims have been voluntarily dismissed without prejudice. . . . [B]ecause a dismissal without prejudice does not preclude another action on the same claims, a plaintiff who is permitted to appeal following a voluntary dismissal without prejudice will effectively have secured an otherwise unavailable interlocutory appeal.

158 Md.App. at 267, 857 A.2d 135 (internal quotes and citations omitted).

In *Collins,* we focused on the appellants' undisguised intent to use voluntary dismissals as a vehicle for obtaining an advisory opinion from this Court and then later resurrect the dismissed claims in circuit court. *Id.* at 273–74, 857 A.2d 135. The present case is in a different posture than *Collins* presented. Despite appellants' clear intent to voluntarily dismiss the remaining defendants in order to perfect an appeal, the appellants in this case, unlike those in *Collins,* did not do so with the intent of obtaining an advisory judgment from this Court and then reviving their claims against the dismissed defendants. At oral argument, counsel for appellants represented to the Court that appellants have no intention of refiling claims against the voluntarily dismissed defendants. Counsel further explained that some of those defendants were entities that are no longer in existence. Counsel for appellees do not dispute those representations, and, unlike the appellees in *Collins,* have not challenged the appellants' use of voluntary dismissals as illusory.

Furthermore, appellants' counsel explained that the voluntarily dismissed defendants had never filed appearances in the

case. Rule 2–506(a), governing voluntary dismissal of claims, provides:

Except as otherwise provided in these rules or by statute, a party who has filed a complaint, counterclaim, cross-claim, or third-party claim may dismiss all or part of the claim without leave of the court by filing (1) a notice of dismissal at any time before the adverse party files an answer or (2) a stipulation of dismissal signed by all parties to the claim being dismissed.

Because it is clear that appellants did not voluntarily dismiss the various defendants in order to circumvent the final judgment rule, secure an advisory opinion, and re-file the same claims against the voluntarily dismissed defendants at a later date, we conclude that the court's September 26, 2006, orders of dismissal constitute final, appealable judgments.

### III. The Merits of the Dismissal

**A. Standard of Review**

█ This Court reviews a circuit court's grant of a motion to dismiss to determine whether the dismissal was legally correct. *1000 Friends of Maryland v. Ehrlich,* 170 Md.App. 538, 545, 907 A.2d 865 (2006), *cert. denied,* 396 Md. 12, 912 A.2d 648 (2006). A motion to dismiss is properly granted "when there is no 'justiciable controversy.'" *Young v. Medlantic Laboratory Partnership,* 125 Md.App. 299, 303, 725 A.2d 572 (1999) (quoting *Broadwater v. State,* 303 Md. 461, 467, 494 A.2d 934 (1985)). A defendant may file a motion to dismiss based on the defense that the statute of limitations bars the claim "when a limitations defense is apparent on the face of the complaint, [in which case] the complaint fails to state a cause of action upon which relief can be granted." *Id.* (citations omitted). *See* Maryland Rule 2–3 22(b)(2).

On appeal, "'we must determine whether the complaint, on its face, discloses a legally sufficient cause of action.'" *1000 Friends, supra,* 170 Md.App. at 545, 907 A.2d 865 (quoting *Fioretti v. Md. State Board of Dental Examiners,* 351 Md. 66, 72, 716 A.2d 258 (1998)). The circuit court's grant of the

motion to dismiss will be affirmed only if, viewed in a light most favorable to the non-moving party, and assuming the truth of all well-pleaded facts in the complaint and any inferences reasonably derived therefrom, the allegations in the complaint " 'would nevertheless fail to afford plaintiff relief if proven.' " *Id.* (quoting *Faya v. Almaraz* 329 Md. 435, 443, 620 A.2d 327 (1993)).

### B. Standing to sue the non-holder defendants

■ One basis on which the circuit court granted the non-holder defendants' motions to dismiss was that appellants lacked standing to sue entities that had never held any of the named plaintiffs' loans. Appellants argue that the "non-holder defendants" purchased similar loans that the originating lenders made to other borrowers who are potential members of the as-yet uncertified class, and that the non-holder defendants are therefore "juridically linked" to the lenders that originated the named plaintiffs' loans. Appellants contend that this potential connection of the non-holder defendants to the proposed class action makes it not only efficient, but also appropriate, for the named plaintiffs to sue parties against whom these plaintiffs have no claim. Appellants in the putative class actions assert that they have standing to sue the non-holder defendants on behalf of unnamed potential class members. We agree with the circuit court's conclusion that such defendants should be dismissed.

■ Generally, "[i]n a multi-defendant action or class action, the named plaintiffs must establish that they have been harmed by each of the defendants." *Miller v. Pacific Shore Funding, Inc.,* 224 F.Supp.2d 977, 996 (D.Md.2002), *aff'd,* 92 Fed.Appx. 933 (4th Cir.2004) (*per curiam* unpublished). As we observed in *Cutler v. Wal–Mart,* 175 Md.App. 177, 184, 927 A.2d 1, 5 (2007), the class action is not a separate cause of action, but a procedural device for managing causes of action that are appropriate for class certification under the standards established by Maryland Rule 2–231. The appellants' attempt to state a cause of action against a group of defendants as to whom the named plaintiffs have no claim puts the proverbial

cart far in front of the horse. The questionable "doctrine of juridical link" is not consistent with the Maryland procedural rules for dealing with class action plaintiffs' claims, and the circuit court properly rejected the appellants' request to apply the doctrine in this case.

The doctrine of juridical link refers to a theory recognized by courts in some jurisdictions for the purpose of " 'answer[ing] the question of whether two defendants are sufficiently linked so that a plaintiff with a cause of action against only [one defendant] can also sue the other defendant under the guise of class certification.' " *Popoola v. Md–Individual Practice Assoc., Inc.,* 230 F.R.D. 424, 431 (D.Md.2005) (quoting *In re Eaton Vance Corporate Securities Litigation,* 220 F.R.D. 162, 165 (D.Mass.2004)).

The juridical link doctrine has never been addressed by Maryland appellate courts. The Fourth Circuit has discussed the juridical link doctrine only once, in an unreported opinion. *See Faircloth v. Financial Asset Securities Corporation Mego Mortgage Homeowner Loan Trust,* 87 Fed.Appx. 314, 318 (4th Cir.2004) (per curiam unpublished).[2]

The United States District Court for the District of Maryland rejected the juridical link doctrine in *Popoola, supra.* The district court discussed the genesis of the juridical link doctrine, explaining that it was originally used to determine whether named plaintiffs met the typicality requirement of a class action and could fairly and adequately represent the unnamed class members. 230 F.R.D. at 431. The district court explained:

> In its infancy, the doctrine had nothing to do with Article III standing ... The crux of the doctrine held that "a plaintiff who has no cause of action against the defendant

---

**2.** In *Faircloth,* the Fourth Circuit noted that it "h[ad] yet to recognize" the juridical link doctrine, but concluded that, even if the circuit court were to recognize juridical link as a basis for standing, the named plaintiff in *Faircloth* "could not invoke it successfully" because "no class has been certified and because ... Faircloth's direct claims must be dismissed[.]" 87 Fed.Appx. at 318.

can not ['fairly and adequately protect the interests' of] those who do have such causes of action." [*LaMar v. H & B Novelty & Loan Co.,* 489 F.2d 461, 466 (9th Cir.1973).] The Ninth Circuit, however, suggested that there were two exceptions to this rule: one for situations where the named plaintiff's injuries "are the result of a conspiracy or concerted schemes between the defendants," and another for situations where it would be "expeditious" to combine the defendants into one action because they are "juridically related". *Id.* at 466. Hence, the juridical link doctrine was born. Over time, the doctrine came to be used not only in the class certification analysis under Rule 23, but also in the standing analysis under Article III.

*Id.* (quoting *Eaton Vance, supra,* 220 F.R.D. at 169–70).

The court in *Popoola* noted that it was "skeptical" of the juridical link doctrine as a means of establishing standing, and expressed its "concern that while [the] juridical link doctrine may be 'expeditious,' 'Article III standing . . . does not often bend to expediency and the Supreme Court has warned against such an approach.' " *Id.* at 432 (quoting *Eaton Vance, supra,* 220 F.R.D. at 170). We share the district court's skepticism of the juridical link doctrine, and note that, as was the case in *Faircloth,* the circuit court in this case had not yet certified the proposed class, thereby making even more tenuous any connection between the named plaintiffs and the nonholder defendants that may have held the loans of *potential* unnamed class members. We conclude that the appropriate standing analysis is the one employed by the district court in *Miller, supra,* 224 F.Supp.2d at 996.

In *Miller,* several mortgagors brought putative class actions in federal court, alleging violations by lending entities of the SMLL and the Consumer Protection Act, and seeking a declaratory judgment that their loan agreements were void or voidable as contracts that were contrary to Maryland public policy. As in this case, the named plaintiffs in *Miller* named as defendants certain lending entities that had never actually held the loans of the named plaintiffs. The district court in

*Miller* concluded that the named plaintiffs lacked standing to sue the non-holder defendants, explaining:

> Fundamentally, none of the plaintiffs alleges any contractual relationship whatsoever with Amaximis, Homeq, Banc One, or Bankers Trust. Indeed, they carefully *avoid* stating that any of these defendants holds their mortgage-secured notes or services their loans. Instead, in their allegations directed specifically at these defendants, the plaintiffs state only that they "[are] (or at one point during the life of the loans w[ere] ) . . . holder[s] of mortgage notes related to mortgage loans made by [Pacific] to *Plaintiffs and/or the Class.*" (emphasis added). They never identify them as assignees—past or present—or purchasers of *their* respective notes. Absent a contractual relationship with any of these defendants, the plaintiffs cannot possibly show that their injuries, such as they have suffered, are traceable to the conduct of any of these defendants; nor can they possibly show that a judicial ruling in their favor would likely redress their injuries. Therefore, plaintiffs lack standing to sue Amaximis, Homeq, Banc One, and Bankers Trust.
>
> Their categorization of this suit as a putative class action in no way cures this defect.

224 F.Supp.2d at 995–96 (emphasis and alterations in original).

Appellants concede that the non-holder defendants have at no time held the loans of the named plaintiffs. Appellants cannot "use the procedural device of a class action to bootstrap themselves into standing they lack." *Id.* at 996 (citations omitted). Accordingly, we affirm the decision of the Circuit Court for Baltimore City to grant the non-holder defendants' motions to dismiss on the ground that the named plaintiffs lacked standing to file suit against lenders who neither made a loan to the plaintiffs nor became a subsequent holder of the plaintiffs' notes.

## C. Twelve-year statute of limitations does not apply

■ Appellants assert that in seventeen of their nineteen cases, the mortgage documents are documents under seal, and

their claims are therefore subject to a twelve-year statute of limitations pursuant to CJP § 5–102(a).[3] The circuit court rejected appellants' argument that a twelve-year statute of limitations applies, concluding that the lawsuits did not constitute actions "on" a document under seal. The circuit court noted that "the Named Plaintiffs ... are not suing the Defendants on, or seeking to enforce, the notes or deeds of trust. They do not assert any breach of a note or deed of trust." Instead, the plaintiffs alleged violations of statutes governing the actions the defendants took with respect to the notes. The circuit court concluded, therefore, that the case fell outside the scope of CJP § 5–102(a) and that the applicable statute of limitations was the one generally applicable to civil actions under CJP § 5–101, *i.e.*, three years from the date the actions accrued. We agree.

Appellants assert that, under Maryland law, the word "seal" appearing beside the borrower's signature line on a loan document prepared by the lenders is sufficient to render the loan document an instrument or contract under seal. And indeed, in *Warfield v. Baltimore Gas and Electric Company*, 307 Md. 142, 143, 512 A.2d 1044 (1986), the Court of Appeals held that "the inclusion of the word 'seal' in a pre-printed form executed by an individual is sufficient to make the instrument one under seal," *id.*, subject to the twelve-year statute of limitations. *Id.* at 148, 512 A.2d 1044. The Court in *Warfield* quoted this statement from *General Petroleum Corporation v. Seaboard Terminals Corporation.*, 23 F.Supp. 137 (D.Md. 1938):

---

**3.** CJP § 5–102(a) provides that a twelve-year statute of limitations applies to certain "specialties," and states:

(a) An action on one of the following specialties shall be filed within 12 years after the cause of action accrues, or within 12 years from the date of the death of the last to die of the principal debtor or creditor, whichever is sooner:

(1) Promissory note or other instrument under seal;
(2) Bond except a public officer's bond;
(3) Judgment;
(4) Recognizance;
(5) Contract under seal; or
(6) Any other specialty.

"[I]f the contract is signed by an *individual* opposite and in obvious relation to a legally sufficient seal, the instrument will be taken as a sealed document, where there is nothing on the face of the paper to indicate the contrary even though there be no reference to the seal in the wording of the paper."

307 Md. at 143, 512 A.2d 1044. The Court in *Warfield* further quoted with approval the following passage from *Federal Reserve Bank of Richmond v. Kalin*, 81 F.2d 1003, 1007 (4th Cir.1936):

"Whether a mark or character shall be held to be a seal depends on the intention of the executant, *as shown by the paper.* (Italics ours [*i.e.*, added in *Warfield* ] ). And, as the word 'seal' in parenthesis is in common use as a seal, its presence upon an instrument in the usual place of a seal, opposite the signature, undoubtedly evinces an intention to make the instrument a sealed instrument, which should be held conclusive by the court, in the absence of other indications to the contrary appearing on the face of the instrument itself."

307 Md. at 145, 512 A.2d 1044. *See also Pacific Mortgage and Investment Group, Ltd. v. Horn,* 100 Md.App. 311, 322, 641 A.2d 913 (1994).

Appellees contend, however, that, even if the borrowers signed the notes under seal, the twelve-year statute of limitations should not apply to these claims because: (1) the appellants' suits are not suits "on" the instruments, and (2) the instruments are not instruments under seal with respect to the lenders who did not sign the notes or deeds of trust.

As the lenders in this case correctly point out, a finding that the loan documents are instruments under seal does not end the analysis with respect to determining the applicable statute of limitations. Under the clear language of CJP § 5–102(a), the twelve-year statute of limitations applies only to "an action *on* one of the [specified] specialties." (Emphasis added.) Maryland courts strictly construe statutes of limitation. *Murphy v. Merzbacher,* 346 Md. 525, 532, 697 A.2d

861 (1997). As the circuit court noted, appellants did not allege that the lenders breached the loan agreements, nor did appellants file suit seeking to enforce the loan agreements. Appellants' suits challenging the lenders' collection of certain fees alleged to have violated Maryland law do not constitute suits "on" the instruments. To the contrary, appellants seek to *avoid* enforcement of the terms of the promissory notes and loan instruments. The circuit court therefore correctly concluded that CJP § 5–102 does not apply to this case, and that the appropriate statute of limitations is the general three-year statute of limitations set forth in CJP § 5–101.

We also agree with the lenders' alternative argument as to why the twelve-year limitations period described in CJP § 5–102(a) is not applicable in this case. Because the lenders did not sign the loan documents under seal, the contact is not under seal as to the lenders.

The RESTATEMENT (SECOND) OF CONTRACTS, § 107 (1981) provides that when a promisee accepts a sealed document but does not sign it, any promise that the promisee makes in return "is not under seal." Section 107 states:

*Creation of Unsealed Contract By Acceptance By Promisee*

Where a grantee or promisee accepts a sealed document which purports to contain a return promise by him, he makes the return promise. ***But if he does not sign or seal the document his promise is not under seal,*** and whether it is binding depends on the rules governing unsealed contracts.

(Emphasis added.) [4]

The Restatement approach aligns with the Court of Appeals's analysis in *Mayor and Council of Federalsburg v.*

---

4. Section 109 of the RESTATEMENT (SECOND) OF CONTRACTS provides that, even though the contract is not under seal as to the party who did not sign, it may be enforced by that party as a contract under seal of the promisor who signed:

*Enforcement Of A Sealed Contract By Promisee Who Does Not Sign Or Seal It*

*Allied Contractors, Inc.*, 275 Md. 151, 157, 338 A.2d 275 (1975). In *Federalsburg*, the Court of Appeals held that, because only the contractor, not the town, had signed the construction contract at issue under seal, the contractor's claim against the town was subject to the standard three-year statute of limitations generally applicable to suits for breach of contract, not the twelve-year statute of limitations applicable to specialties. *Id.* at 157, 338 A.2d 275. The Court explained:

> [E]ven though a contract need not always have as many separate seals as there are signatories to it, since in some circumstances a rebuttable presumption of a party's adoption as his own of another party's seal can be established (*e.g.*, such as when the instrument purports on its face to be sealed by all the parties signing it), *Stabler v. Cowman*, 7 G. & J. 284 (1835); *Rockwell v. Capital Traction Co.*, 25 App.D.C. 98 (1905); *McNulty v. Medical Service of D.C., Inc.*, 176 A.2d 783 (Mun.Ct.D.C.1962), ordinarily *when a seal is attached to the signature of one of the parties but not to that of the other party, the contract as to the latter is a simple contract while as to the former it is a contract under seal.* *Pearl Hominy Co. v. Linthicum*, 112 Md. 27, 75 A. 737 (1910); *State Use of Gilkeson v. Humbird*, 54 Md. 327 (1880).

*Id.* at 156–57, 338 A.2d 275 (emphasis added).

The Court of Appeals concluded in *Federalsburg* that the contract was not under seal as to the town, basing its holding on the following factors: (1) it was "undisputed that the only seal attached to this document is Allied's corporate seal"; (2) "no reference to a seal is made in the body of the instrument"; and (3) "no extrinsic evidence was presented to prove that the town, through adoption of the other party's seal or otherwise, intended the contract, at least as to itself, to operate as a specialty." *Id.* at 157, 338 A.2d 275. The same three factors

---

The promisee of a promise under seal is not precluded from enforcing it as a sealed contract because he has not signed or sealed the document, unless his doing so was a condition of delivery, whether or not the document contains a promise by him.

are present in this case as well. None of the lenders in this case signed any of the loan instruments. The only signatures present on the notes are those of the appellant borrowers. The loan documents do not refer to the instruments as "documents under seal," nor did appellants proffer any evidence that the lenders intended the loan documents to operate as contracts under their respective seals. Accordingly, CJP § 5–102(a) does not apply to this case.

## D. Appellants' Claims

Even though we agree with the circuit court's conclusion that the three-year statute of limitations is applicable, and we further agree that the start of the limitations period was not deferred until the point in time that the plaintiffs "discovered" that they might have legal remedies, we ultimately come to a different conclusion with respect to the application of the statute of limitations to the appellants' claims for relief. As to the claims based upon alleged misrepresentations that constituted violations of the Consumer Protection Act, we agree with the circuit court that all operative facts were known to the plaintiffs at the time of closing, and, because no actions based upon the CPA were instituted within three years of closing, those claims are barred by limitations and were properly dismissed. The claims under the SMLL, however, are of a different character. The statutory remedy that the SMLL provides for a borrower "if a lender violates any provision of [the SMLL]" is that the lender "may *collect* only the principal amount of the loan and may *not collect* any interest, costs, or other charges with respect to the loan." CL § 12–413 (emphasis added).[5] Accordingly, the SMLL creates for the borrower a statutory claim for recovery of an excess

---

5. CL § 12–413 provides:

> Except for a bona fide error of computation, if a lender violates any provision of this subtitle he may collect only the principal amount of the loan and may not collect any interest, costs, or other charges with respect to the loan. In addition, a lender who knowingly violates any provision of this subtitle also shall forfeit to the borrower three times the amount of interest and charges collected in excess of that authorized by law.

payment, and that right of recovery accrues each time the borrower makes a payment that results in the lender collecting more than the principal amount of the loan. Although the three-year statute of limitations is applicable to the borrowers' suits to recover any money wrongfully collected by the lenders, it only bars recovery of amounts collected by the lender more than three years before the date of the complaint. We explain in more detail.

### 1. Claims Under the Consumer Protection Act

The Consumer Protection Act, CL § 13–301, *et seq.*, was enacted to "protect the consumer by setting minimum standards and to restore an undermined public confidence in merchants." *Klein v. State,* 52 Md.App. 640, 645, 452 A.2d 173 (1982) (citations omitted). Appellants contend that the lenders violated CL § 13–301(1), (2), (3), and (9), which provide:

Unfair or deceptive trade practices include any:

(1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

(2) Representation that:

(i) Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;

(ii) A merchant has a sponsorship, approval, status, affiliation, or connection which he does not have;

(iii) Deteriorated, altered, reconditioned, reclaimed, or secondhand consumer goods are original or new; or

(iv) Consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not;

(3) Failure to state a material fact if the failure deceives or tends to deceive; ...

(9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omis-

sion of any material fact with the intent that a consumer rely on the same in connection with:

(i) The promotion or sale of any consumer goods, consumer realty, or consumer service;

(ii) A contract or other agreement for the evaluation, perfection, marketing, brokering or promotion of an invention; or

(iii) The subsequent performance of a merchant with respect to an agreement of sale, lease, or rental[.]

■■■ In their brief, appellants contend: "The cause of action for violation of the Maryland Consumer Protection Act alleges that the same conduct which constitutes a violation of the SMLL also violated Md. Com. Law Code Ann. §§ 13–301(1), (2), (3) and (9)[.]" The alleged conduct of the defendants that appellants contended supported their claims under the CPA consisted of the originating lenders charging fees and closing costs that were in excess of the amounts permitted by the SMLL, the failure to provide loan applicants a required disclosure form, and the failure of the originating lenders to obtain the necessary licenses to make secondary mortgage loans. All such conduct would have necessarily occurred on or before the date of the loan closings, and there was no allegation of subsequent misconduct that arguably supported a claim under the CPA. Appellants assert that "the Consumer Protection Act provides an alternative cause of action for the same remedy provided by the SMLL." But the statutory remedy provided by CL § 12–413 to a borrower for a violation of the SMLL is simply not the same as the statutory remedy provided by CL § 13–408 to a consumer who has suffered damages caused by a violation of the CPA.[6] The remedy provided by the CPA is limited to a consumer's "injury or loss sustained

---

**6.** The CPA provides a private cause of action for damages in CL § 13–408(a), which states:

In addition to any action by the Division or Attorney General authorized by this title and any other action otherwise authorized by law, any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title.

... as a result of a practice prohibited by [the CPA]." The consumer's cause of action for any violation of the CPA on the part of the originating lenders accrued no later than the date of closing, at which point the borrowers knew all facts necessary to pursue their claims under the CPA.

In *Greene Tree Home Owners Association v. Greene Tree Associates*, 358 Md. 453, 482, 749 A.2d 806 (2000), the Court of Appeals held that "a statutory specialty does not lie for unliquidated damages," and consequently, that the three-year statute of limitations set forth in CJP § 5–101 generally applies to actions filed under the Consumer Protection Act. *Accord Moreland v. Aetna U.S. Healthcare*, 152 Md.App. 288, 295, 831 A.2d 1091 (2003); *Sternberger v. Kettler Bros., Inc.*, 123 Md.App. 303, 306, 718 A.2d 619 (1998). We agree with the circuit court that the claims alleging violations of the CPA should have been filed within three years after the loan closings, and the court properly granted the defendants' motions to dismiss the claims based upon the CPA.

## 2. The Discovery Rule

Appellants concede that all nineteen o f the lawsuits were filed more than three years after the date of closing of the loans. Appellants nevertheless assert that, under the discovery rule, appellants' causes of action did not accrue at the time of closing, but instead accrued when appellants discovered that the law gave them a cause of action as a result of paying fees in excess of those allowed by the Maryland Secondary Mortgage Loan Law. Appellants argue that, under the discovery rule, a cause of action does not accrue until the plaintiff has a subjective awareness of a legal right to pursue a claim. That is clearly not the law of Maryland. The focus of the Maryland discovery rule is facts, not legal theories. The relevant inquiry for the purpose of determining when a cause of action accrued under the discovery rule is when a plaintiff knew or reasonably should have known of the operative facts giving rise to the cause of action, not whether a plaintiff had knowledge of the applicable law. *Moreland v. Aetna U.S. Healthcare, Inc.*, 152 Md.App. 288, 299, 831 A.2d 1091 (2003).

Neither ignorance of the law nor failure to consult an attorney to inquire about one's legal rights will expand the period of limitations within which suit must be filed. *Cf. Post v. Bregman,* 349 Md. 142, 156, 707 A.2d 806 (1998) ("parties to a contract are deemed to have contracted with knowledge of existing law").

 The discovery rule is applicable generally to determine the date on which a cause of action accrues for the purpose of the running of the statute of limitations. *Dashiell v. Meeks,* 396 Md. 149, 168, 913 A.2d 10 (2006). The Court of Appeals adopted the discovery rule in recognition of "the inherent unfairness of 'charging a plaintiff with slumbering on his rights where it was not reasonably possible to have obtained notice of the nature and cause of an injury[.]' " *Id.* (quoting *Frederick Road Ltd. Partnership v. Brown & Sturm,* 360 Md. 76, 95, 756 A.2d 963 (2000)). In *Lumsden v. Design Tech Builders, Inc.,* 358 Md. 435, 445, 749 A.2d 796 (2000), the Court of Appeals explained the discovery rule as follows:

> [A] cause of action accrues only when the claimant knows or should know of the wrong.... A claimant reasonably should know of a wrong if the claimant has "knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus, charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued." *Poffenberger [v. Risser],* 290 Md. [631] at 637, 431 A.2d [677] at 681 [(1981)] (alteration in original) (quoting *Fertitta v. Bay Shore Dev. Corp.,* 252 Md. 393, 402, 250 A.2d 69, 75 (1969)). We analyzed the meaning of this language in *O'Hara v. Kovens,* 305 Md. 280, 503 A.2d 1313 (1986):
>
> > ["]Under the discovery rule as stated in *Poffenberger* limitations begin to run when a claimant gains knowledge sufficient to put her on inquiry. As of that date, she is charged with knowledge of facts that would have been disclosed by a reasonably diligent investigation.["] ...

From that date the statute itself allows sufficient time— three years—for reasonably diligent inquiry and for making a decision as to whether to file suit.

■■■ Appellants advance two arguments in support of their contention that their suits were filed within the statute of limitations under the discovery rule. First, appellants assert that their "discovery of the wrong" occurred, not at the time of closing, but at the time they discovered that the charges for closing costs violated the SMLL. Appellants argue: "The named Plaintiffs first became aware that their second mortgage loans might not comply with the SMLL within three years of the date of filing of their lawsuits. Plaintiffs had no reason to suspect that their second mortgage loans included closing charges that violated the SMLL." Second, appellants contend that they were not properly on notice of the illegal closing costs at the time of closing because "every lender . . . failed to provide the mandatory disclosure required by Md. Com.Code Law Ann. § 12–407.1." And, appellants further argue that, in any event, whether they were on notice of the lenders' wrongs is a factual issue inappropriate for resolution on a motion to dismiss.

It is undisputed in this case that the loan documents signed by appellants at closing disclosed the closing costs of which appellants complain. It is further beyond dispute that the notice plaintiffs contend was required by CL § 12–407.1 should have been provided at or before closing, which is a date that was known to the plaintiffs. Less clear from the record is the date on which each respective plaintiff knew that the originating lender was not properly licensed, but that was a matter of public record that appellants could have investigated prior to closing. Although appellants contend that knowledge of these various facts was not sufficient to begin the period of limitations until the plaintiffs attained subjective awareness of their legal rights, the discovery rule is couched in terms of knowledge of facts rather than subjective appreciation of the legal significance of facts.

Similar to appellants in this case, the plaintiffs in *Moreland, supra*, advanced an accrual theory "premised entirely on notice of the law, not notice of the facts." 152 Md.App. at 298, 831 A.2d 1091. In *Moreland*, this Court rejected the plaintiffs' argument that their cause of action did not accrue until they learned of the illegality of the defendant's actions. *Id.* We held that plaintiffs cannot rely on the discovery rule to toll the three-year statute of limitations when the plaintiffs had knowledge o f the operative facts giving rise to their claim more than three years prior to filing their lawsuit. *Id.* It was undisputed in *Moreland* that the plaintiffs had suffered their injury more than three years before the date they filed suit seeking to recover monies plaintiffs had paid to the defendant, in ignorance of the law, more than eight years before.

The appellants' discovery rule argument is based upon knowledge of law, not facts. Consequently, it provides no basis for deferring the start of limitations. We conclude that appellants' claims under the Consumer Protection Act accrued on the date of the closings of each of their secondary mortgage loans, when appellants learned that they had been charged the allegedly impermissible closing costs and other fees associated with the loan. It was at that time that the lenders allegedly deceived appellants by "fail[ing] to state a material fact," and provided appellants with the written and oral statements which appellants claim constituted unfair or deceptive trade practices within the meaning of CL § 13–301. The general statute of limitations, CJP § 5–101, provided appellants with three years from the date of appellants' loan closings, when the originating lenders engaged in the purported deception, in which to file suit.

If the remedy provided by the SMLL was couched in the same language as the CPA and limited a plaintiff's recovery to any "injury or loss sustained ... as a result of a practice prohibited by [the SMLL]," we would reach the same conclusion with respect to those claims. But, as noted above, and explained more fully below, CL § 12–413 has a different focus than CL § 13–408. We apply the discovery rule in the same manner to claims under both statutes, but we conclude that,

unlike the appellants' claims for damages for violations of the CPA, appellants' claims under CL § 12–413 were timely asserted to recover amounts collected by the defendants during the three years prior to the complaints and thereafter.

### 3. Alleged fraudulent concealment of a cause of action

■ We also reject appellants' argument that the lenders' failure to provide appellants with the forfeiture of rights disclosure form required by CL § 12–407.1 constituted a fraudulent concealment that tolled the statute of limitations pursuant to CJP § 5–203. CJP § 5–203 provides: "If the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud."

■ As the Court of Appeals observed in *Dual Incorporated v. Lockheed Martin* Corporation, 383 Md. 151, 170, 857 A.2d 1095 (2004):

> Maryland law recognizes that it is unfair to impart knowledge of a tort when a potential plaintiff is unable to discover the existence of a claim due to fraud or concealment on the part of the defendant. Md.Code (1973, 2002 Repl.Vol.), § 5–203 of the Courts & Judicial Proceedings Article; *see also Frederick Road Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 98–99, 756 A.2d 963, 975 (2000) (stating that [CJP] § 5–203 was passed to avoid situations where a plaintiff, despite a diligent investigation, is kept ignorant of the existence of a claim by the fraud of the defendant). When a defendant acts, through fraud or concealment, to frustrate the plaintiff's ability to discover a claim, the statute of limitations is tolled until "the time when the party discovered, or through the exercise of ordinary diligence should have discovered the fraud."

(Quoting CJP § 5–203.)

■ Plaintiffs bear the burden of proving the alleged fraud when they assert, pursuant to CJP § 5–203, that, due to

fraud by an opposing party, the statute of limitations should not bar their claims. *Newell v. Richards,* 323 Md. 717, 726, 594 A.2d 1152 (1991). Fraud in the context of CJP § 5–203 has "the same scope as the element of falsity for the tort of deceit." *Geisz v. Greater Baltimore Medical Center,* 313 Md. 301, 332, 545 A.2d 658 (1988) (citing *Brack v. Evans,* 230 Md. 548, 555, 187 A.2d 880 (1963)). The Court of Appeals has set forth the following five elements that a plaintiff must prove by clear and convincing evidence in order to prove a cause of action in tort for fraud or deceit:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from that misrepresentation.

*VF Corporation v. Wrexham Aviation Corporation,* 350 Md. 693, 703, 715 A.2d 188 (1998), quoting *Nails v. S & R,* 334 Md. 398, 415, 639 A.2d 660 (1994).

We have further held that, for a plaintiff to invoke CJP § 5–203 for the purpose of tolling the statute of limitations, the plaintiff "must properly plead fraud with particularity. . . . [G]eneral or conclusory allegations of fraud are insufficient." *Doe v. Archdiocese of Washington,* 114 Md.App. 169, 187, 689 A.2d 634 (1997) (citations omitted).

Appellants' allegations relative to the defendants' fraud fell far short of the requirement that a plaintiff must specifically proffer acts of fraudulent concealment of the cause of action. Appellants did not plead fraud as a count in their complaints, nor did any of the counts of the complaints set forth "specific allegations of how the fraud kept [appellants] in ignorance" of their causes of action. Appellants raised the issue of fraud in their responses to the lenders' motions to dismiss, at which point appellants asserted in a conclusory manner that the alleged failure of the lenders to provide loan applicants the

form required by CL § 12–407.1 was sufficient fraud to toll the statute of limitations under CJP § 5–203.[7]

Although CL § 12–407.1, on its face, requires distribution of the form to all applicants for a secondary mortgage loan, the mere failure to comply with that requirement could not be considered fraudulent concealment by the lenders of the appellants' causes of action under either the SMLL or the CPA. Section 5–203 is therefore unavailable to appellants as a means of tolling the statute of limitations.

### 4. Claims under the SMLL for damages and for declaratory judgment

This Court has characterized CL § 12–413 of the SMLL as "remedial [in] nature," and stated that the remedies provided for borrowers by the statute are "private benefit[s] [conferred] as recompense for the wrong they had suffered as a result of [lenders'] failure to heed the restrictions of the SMLL." *Williams v. Standard Federal Savings and Loan Association*, 76 Md.App. 452, 455–56, 545 A.2d 708, *cert. denied*, 313 Md. 689, 548 A.2d 128 (1988). As we pointed out in *Williams, id.*

---

7. CL § 12–407.1 provides, in relevant part:
 (a) *Commissioner to develop form.*—The Commissioner shall develop and prepare a form that each lender shall furnish to an applicant for a secondary mortgage loan. The form shall state the following:
 (1) The purpose for which the loan is to be used;
 (2) A disclosure that, if the loan is for a commercial purpose, the borrower shall forfeit certain rights.
 (b) *Required explanation of forfeiture of rights.*—The form shall state that the forfeiture of rights includes:
 (1) The borrower's right to pay a loan origination fee that, when combined with any finder's fee imposed by a mortgage broker under § 12–804 of this title, does not exceed the greater of:
 (i) $500 or 10 percent of the net proceeds of a commercial loan of $75,000 or less made under this subtitle; or
 (ii) $250 or 10 percent of the net proceeds of any other loan made under this subtitle;
 (2) The borrower's right not to pay any other commission, finder's fees, or points for obtaining, procuring, or placing a loan; and
 (3) The borrower's right not to pay an interest rate greater than 24 percent.

at 455, 545 A.2d 708, the civil ramifications for a lender who violates the provisions of the SMLL are harsh:

> Even if the violation is unintentional, the lender is prevented from collecting any interest or other charges exacted [from] the borrower for the loan. Moreover, where the borrower can establish that the lender "knowingly" violated the SMLL provisions regulating the amount of interest and other charges imposed by the lender, the borrower may recover enhanced damages from the lender, i.e., "three times the amount of interest and charges collected in excess of that authorized by law."

(Quoting CL § 12–413.)

In *Duckworth v. Bernstein*, 55 Md.App. 710, 724, 466 A.2d 517, *cert. denied*, 298 Md. 243, 469 A.2d 452 (1983), we pointed out that the prohibition upon the lender's right to collect any payment in excess of the principal "does not require a *knowing* violation of the Secondary Mortgage Loan Law, but simply a violation to trigger its sanctions." We further commented, *id.*:

> The statutory language appears clear in this regard, and such an interpretation is consistent with the protective purposes of the statute. It is a law intended to guard the foolish or unsophisticated borrower, who may be under severe financial pressure, from his own improvidence. The law achieves this beneficent purpose by penalizing even the unwitting violator, to the extent of limiting him to recovery of the principal amount of the loan. This is consistent with the strong Maryland policy against usury. *See Plitt v. Kaufman*, 188 Md. 606, 612, 53 A.2d 673 (1947). It is also consistent with the legislative approach to consumer protection illustrated in *Brown v. Doug Griffith Dodge City*, 52 Md.App. 687, 452 A.2d 984 (1982).

*See also Thoreson v. Shaffer*, 111 Md.App. 689, 693, 683 A.2d 1153 (1996) (lender who unknowingly violated the provisions of the SMLL was not entitled to collect from the borrower any interest, costs, or other charges with respect to the loan).

■ We conclude that the circuit court erred in granting the lenders' motions to dismiss the claims under the SMLL solely on the basis that all such claims were barred by statute of limitations. As explained above with respect to appellants' claims under the Consumer Protection Act, the applicable statute of limitations is three years. *See also Williams, supra,* 76 Md.App. at 464, 545 A.2d 708 (holding that the one-year statute of limitations applicable to suits for a fine, penalty or forfeiture provided for in CJP § 5–107 did not apply to claims under the SMLL). Unlike appellants' claims under the Consumer Protection Act, however, appellants' claims for recovery of monies wrongfully paid under CL § 12–413 did not fully accrue at the time of closing because the borrowers could not pursue the remedy provided in CL § 12–413 until the lenders had collected interest, costs, or other charges in excess of the principal amount of the loan.

Under the counts in appellants' complaints alleging violation of the SMLL and seeking a declaratory judgment, appellants allege that certain originating lenders issued secondary mortgage loans without first obtaining the license required by the SMLL, and that all originating lenders charged fees in excess of that allowed by the SMLL, and failed to provide loan applicants a required disclosure form. On the basis of those allegations, appellants sought the relief provided for in CL § 12–413, which specifically states that, "if a lender violates *any provision* of this subtitle [*i.e.,* Commercial Law Article, Title 12, Subtitle 4,] he may collect only the principal amount of the loan and *may not collect any interest, costs, or other charges with respect to the loan.*" (Emphasis added.) Appellants also sought a judgment declaring that the secondary mortgage loans were illegal contracts and were in violation of the SMLL, thereby entitling appellants to the remedies provided in CL § 12–413.

In *Miller, supra,* 224 F.Supp.2d at 986, the district court, confronted with similar claims under the SMLL, concluded that all of the excessive closing costs and fees were "paid" via promissory note executed at the time of closing, and that, even if the total amount of the excessive closing costs was rolled

into the loan balance and repaid over the life of the second mortgage, the borrowers could not recover any such fees in a suit filed more than three years after closing, regardless of whether they were still making installment payments under such notes. The court explained its reasoning for concluding that the statute of limitations barred a suit to recover the costs and fees that were charged at closing, *id.*:

> [The plaintiff] obtained the allegedly illegal [secondary mortgage] loan from Pacific on October 13, 1998. On that date, "[a]t closing," ... he was charged all of the fees and expenses of which he complains. Therefore, that is the date on which "the legally operative facts permitting the filing of [his] claims came into existence." *Heron [v. Strader]*, 361 Md. [258] at 264, 761 A.2d 56 [(2000)]. Furthermore, the charges were all expressly identified in the closing documents. At closing, therefore, [the plaintiff] also appears to have had sufficient knowledge of circumstances indicating he might have been harmed. *See O'Hara [v. Kovens]*, 305 Md. [280] at 302, 503 A.2d 1313 [(1986)]. Despite this knowledge, he waited until January 16, 2002, more than three years after closing the loan, to file his suit....

The court in *Miller* further explained, *Id.* at 989–90:

> [T]he fees [that violated the SMLL] were included in the total indebtedness on the loan.... With each monthly bill, then, [the plaintiff] reasons, Pacific (or the current holder of the note) newly charges illegal fees; and with each monthly payment by the borrower, Pacific (or the current holder of the note) newly receives and collects illegal fees.
>
> The argument is ingenious, but flawed. The apparently punctuated charging, receipt, and collection are no more than the lingering, ongoing, continuing aspects of a unitary action initiated more than three years ago. If, as [the plaintiff] alleges, that action violates the SMLL, the violation has inflicted a single monetary injury whose amount increases steadily over time.

The circuit court adopted the same analysis as the *Miller* court, and held, in essence, that the remedy provided by CL

§ 12–413 evaporates three years following the loan closing even if the lender (or its assignees) is continuing to collect interest, costs and other charges in excess of the principal. We disagree with this aspect of the *Miller* court's analysis, which focuses on the borrowers' fictional payment at closing rather than the lenders' actual "collect[ion]" of money that exceeds "the principal amount of the loan." Once the lender "violates any provision of [the SMLL]," then, with each payment the lender collects that includes "any interest, costs or other charges with respect to the loan," the lender has collected payments that violate the SMLL. After each monthly payment, therefore, appellants would have a new cause of action for seeking (a) recovery of the excess amount paid, (b) penalty damages if it can be proved that the lender "knowingly violate[d] any provision of [the SMLL]," and (c) declaratory and injunctive relief with respect to the borrower's remaining obligation under the loan.

Appellants in this case, therefore, were entitled to sue for the remedy provided by CL § 12–413 following each payment of sums in excess of the principal, and the applicable three year statute of limitations permits them to seek the statutory remedy for payments made within three years prior to the date of filing of their respective complaints. Similarly, they were entitled to seek declaratory relief with respect to any payments made within that same time period as well as with respect to any ongoing or future liability under the loans.

In *The Singer Company, Link Simulation Systems Division v. Baltimore Gas & Electric Co.*, 79 Md.App. 461, 558 A.2d 419 (1989), we considered the application of the statute of limitations to claims based upon contract and negligence theories with respect to a series of power outages. The circuit court had dismissed the complaint as barred by limitations because it was filed more than three years after the plaintiff first experienced a power interruption. *Id.* at 472, 558 A.2d 419. On appeal, the plaintiff argued that "each successive breach commenced a separate cause of action for limitations purposes." *Id.* We concluded that the plaintiff had alleged a series of breaches of the defendant's obligations, and could

therefore pursue recovery for those that had occurred within the three years preceding the suit. We stated, *Id.* at 473–75, 558 A.2d 419:

In the present case, it is undisputed that, subject to certain limitations, B G & E had a continuing contractual obligation to provide Singer with electricity. *See* Md. Regs. Code tit. 20, §§ 50.04.06 and 50.07.05. We thus perceive that our resolution of the issue *sub judice* turns upon a determination of whether a contract action based upon various alleged breaches of a continuing contractual obligation accrues for all time upon the first breach of that obligation of which the aggrieved party is aware or should have been aware, or whether each successive breach of such an obligation begins the running of the statute of limitations anew.

Although there is an absence of reported Maryland case-law on point, appellate courts from other jurisdictions have addressed this issue in a variety of contractual scenarios. *See Airco Alloys Div., Airco, Inc. v. Niagara Mohawk Power Corp.,* 76 A.D.2d 68, 430 N.Y.S.2d 179 (Sup.Ct., App.Div.1980); *Dameron v. Sinai Hospital of Baltimore, Inc.,* 815 F.2d 975 (4th Cir.1987); *Barker v. Jeremiasen,* 676 P.2d 1259 (Colo.App.1984); *Bulova Watch Co. v. Celotex Corp.,* 46 N.Y.2d 606, 415 N.Y.S.2d 817, 389 N.E.2d 130 (1979); *Green v. Petersen,* 218 N.Y. 280, 112 N.E. 746 (1916); *Mead Reinsurance Corp. v. Town of Oyster Bay,* 138 A.D.2d 578, 526 N.Y.S.2d 159 (1988); *Franza's Universal Scrap Metal, Inc. v. Town of Islip,* 89 A.D.2d 843, 453 N.Y.S.2d 24 (1982). *Indian Territory Illuminating Oil Co. v. Rosamond,* 190 Okla. 46, 120 P.2d 349 (1941); *Sims v. Falvey,* 234 S.W.2d 465 (Tex.Civ.App.1950). For example, in *Airco Alloys, supra,* a case involving a utility company's failure to provide certain customers with relinquished replacement power, the court ruled that "where a contract provides for continuing performance over a period of time, each breach may begin the running of the statute (of limitations) anew such that accrual occurs continuously and plaintiffs may assert claims for damages occurring (within

the limitations period)." 76 A.D.2d at 80, 430 N.Y.S.2d at 186 (citations omitted). In *Barker, supra,* the plaintiffs brought suit in 1979 alleging that the defendants' horse operation violated certain protective covenants. In response, the defendants, noting that the record unequivocally established violations of the covenants commencing in 1974, argued, *inter alia,* that the action was time-barred under a statute requiring the bringing of such an action within three years after the cause accrued. The court, after observing that the covenants imposed a continuing obligation upon the defendants and that repeated and successive breaches of the covenants had continued within three years of the suit, held that any damage claims resulting from breaches which occurred within the limitations period were not time-barred.

We believe the rationale expressed by the foregoing cases is sound. For that reason, and because barring such claims would not serve to promote the policies that statutes of limitations reflect, *see Pierce v. Johns–Manville Sales Corp.,* 296 Md. 656, 665, 464 A.2d 1020 (1983), we conclude that where a contract provides for continuing performance over a period of time, each successive breach of that obligation begins the running of the statute of limitations anew, with the result being that accrual occurs continuously and a plaintiff may assert claims for damages occurring within the statutory period of limitations.

In the present case, we have already noted that, subject to certain limitations, BG & E had an ongoing contractual obligation to supply Singer with electrical power. Furthermore, we are mindful that the contract claims asserted by Singer in the complaint are limited to those alleged breaches and resulting damages which occurred within three years of the filing of the suit. Accordingly, we hold that the trial court erred, as a matter of law, in determining that Singer's common law contract claims were barred by limitations.

(Footnote omitted.)

Similarly, with respect to the claims based upon a negligence theory in *Singer,* we stated, *Id.* at 476–77, 558 A.2d 419:

It is well settled in Maryland, however, that a tort cause of action based upon the breach of a duty which is continuing in nature and seeking recovery of damages incurred within the limitations period, is not time-barred. *See Shell Oil Co. v. Parker,* 265 Md. 631, 636, 291 A.2d 64 (1972); *Martin v. Arundel Corp.,* 216 Md. 184, 192–93, 140 A.2d 146 (1958); *Consolidated Pub. Util. Co. v. Baile,* 152 Md. 371, 376, 136 A. 825 (1927); *Commissioners of Aberdeen v. Bradford,* 94 Md. 670, 673–74, 51 A. 614 (1902); *Anne Arundel County v. Litz,* 45 Md.App. 186, 197, 412 A.2d 1256 (1980).

In the case at bar, Singer's negligence claims are irrefutably premised upon the allegation that BG & E breached ongoing duties owed its customer. Furthermore, it is undisputed that the damages for which Singer presently seeks recovery were incurred within three years of the commencement of the present action. We hold, therefore, that the trial court erred, as a matter of law, in determining that Singer's negligence claims were time-barred.

Although *Singer* is not on point because it involved continuing duties based upon contract or tort, we conclude that the limitations analysis is applicable to appellants' claims asserting a statutory remedy under CL § 12–413. If the borrowers can establish the alleged violations of the SMLL, then the lenders' collection of payments that exceeded the principal amount of the loan constituted successive wrongful acts, each giving rise to a claim for recovery of the amount wrongfully collected.

Accordingly, we affirm the judgment of the circuit court in part and reverse in part. We remand these cases for further proceedings not inconsistent with this opinion. On remand, the court may be guided by the comments this Court made with respect to the remand ordered in *Duckworth, supra,* 55 Md.App. at 727, 466 A.2d 517, in which we noted that if the circuit court determined that the loan was not a commercial loan, and that the loan was therefore in violation of the SMLL, then the lender "may recover no more than the principal amount of the loan." We continued, *id.:*

On remand, ... [assuming the chancellor does not find that the loan was a commercial loan,] the transaction was a secondary mortgage loan, and [the chancellor] must then further find whether [the lender] knew or should have known the transaction was not a commercial loan. If [the chancellor] finds the requisite knowledge, [the chancellor] must then calculate the damages due the [borrowers] under the second sentence of § 12–413 and enter judgment for the [borrowers] in that amount.

Even if [the chancellor] finds that [the lender] neither knew nor should have known that the loan was not commercial, [the chancellor] must calculate the principal balance on the loan and frame a declaratory decree stating the amount of principal [the lender] is entitled to recover. If [the lender] has already been paid more than that amount, the [borrowers] are entitled to judgment for the excess.

**THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS AFFIRMED IN PART AND REVERSED IN PART. THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**COSTS INCURRED BY THE "NON–HOLDER" APPELLEES TO BE PAID BY APPELLANTS; ALL OTHER COSTS TO BE PAID ONE–THIRD BY APPELLANTS AND TWO–THIRDS BY "HOLDER" APPELLEES.**